# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 10, 2009        Decided July 21, 2009

No. 08-7002

FLOYD E. LYTES,
APPELLANT

v.

DC WATER AND SEWER AUTHORITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00402)

*Jeannine M. Kenney*, Student Counsel, argued the cause as amicus curiae in support of appellant. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, *Charlotte Garden*, Supervising Attorney, and *Daniel R. Kahan*, Student Counsel.

*Floyd E. Lytes*, pro se, was on the brief for appellant.

*Lesley A. Pate* argued the cause for appellee. With her on the brief were *Robert G. Ames* and *Trevor S. Blake.*

Before: GINSBURG, TATEL, and BROWN, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*:  Floyd E. Lytes sued his former employer, the District of Columbia Water and Sewer Authority, a/k/a WASA, alleging it refused to accommodate his disability and then terminated his employment, in violation of the Americans with Disabilities Act of 1990 (ADA).  The district court granted summary judgment to the Authority because it concluded no reasonable jury could find Lytes was disabled when the alleged discrimination occurred. While Lytes's appeal was pending, the ADA Amendments Act of 2008 became law.  We hold the Amendments do not apply retroactively and, applying the pre-Amendments ADA, affirm the judgment of the district court because, based upon record evidence, no reasonable jury could find Lytes was disabled when he was refused accommodation and discharged.

## I. Background

The pre-Amendments ADA protected a "qualified individual with a disability" from discrimination in the "terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a) (2000), including an employer's refusal to "mak[e] reasonable accommodations" for an individual's disability, *id.* § 12112(b)(5)(A).  As relevant here, an individual was disabled if he had "a physical or mental impairment that substantially limit[ed] [him in] one or more ... major life activities [MLAs]," i.e., was actually disabled, or if he was "regarded as having such an impairment."  *Id.* § 12102(2)(A) & (C).

In May 2000, Lytes, a plant operator, injured his back while at work.  He was diagnosed with chronic degenerative disc disease and underwent corrective surgery. Lytes stopped working around December 2000, at which time he began

receiving workers' compensation. Two months later he had a heart attack and underwent angioplasty, followed in June 2002 by spinal fusion surgery designed to relieve pain in his back and legs.

A physician who twice examined Lytes at the request of the Authority's workers' compensation insurance carrier disagreed with Lytes's orthopedic surgeon, Dr. James Tozzi, regarding Lytes's physical capabilities. Accordingly, the WASA asked Dr. Tozzi to authorize a functional capacity evaluation (FCE). The FCE was done in February 2003 and indicated Lytes had "mild restricted standing and walking tolerances" and limitations in "squatting, bending, ladder climbing, and overhead reaching." These functional deficits placed Lytes "at the sedentary-light physical demand level with ... a workplace tolerance of 8 hours."

Dr. Tozzi noted progressive improvement in Lytes's condition after the FCE. In September 2003 he upgraded Lytes to light duty with limitations imposed "primarily to avoid recurrent injury" to Lytes's spine. The next day Lytes met with the Authority's risk manager, who told him light duty was unavailable and encouraged him to continue to collect workers' compensation, which he did.

In a December 2003 letter the WASA informed Lytes he was medically disqualified from returning as a plant operator and had 60 days to find a suitable position at the Authority. When Lytes was unable to do so, the WASA terminated his employment in a March 2004 letter. Lytes filed a charge of disability discrimination, which the Equal Employment Opportunity Commission dismissed. Thereafter Lytes, who was then represented by counsel, sued the Authority, claiming violations of the ADA, several other statutes, and the WASA's collective bargaining agreement, and requested

retrospective relief, including compensatory damages and back pay.

Only Lytes's ADA claim is at issue in this appeal.  In the district court the Authority moved for summary judgment on that claim, arguing no reasonable jury could find Lytes was disabled when he was refused accommodation and discharged.  Lytes focused his response upon the argument that the Authority's risk manager perceived him to be disabled, but also alleged, without pointing to any evidence in the record, he was actually disabled because of restrictions on bending, "carry[ing] heavy weights," reaching and twisting, and mowing the lawn "for long periods."  The district court rejected Lytes's "'perceived disability' theory" and held the work restriction and limitations on household chores could not support a finding that Lytes was actually disabled.  *See* 527 F. Supp. 2d 52, 59–62 (2007).

Lytes appealed *pro se*.  This court appointed Steven H. Goldblatt, Director of the Appellate Litigation Program at Georgetown University Law Center, as amicus curiae to support his position, and Lytes filed a letter stating he would rely upon the submissions of the amicus.

On September 25, 2008 the Congress enacted the ADA Amendments Act of 2008 (ADAA) in order to "reinstat[e] a broad scope of protection" under the ADA and to "reject" the holdings in *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184 (2002), and *Sutton v. United Air Lines*, 527 U.S. 471 (1999). ADAA § 2(b), Pub. L. No. 110-325, 122 Stat. 3553, 3554. The Congress delayed the effective date of the ADAA to January 1, 2009. *Id.* § 8, 122 Stat. at 3559.

## II. Analysis

Citing the ADAA, the amicus challenges only the district court's holding Lytes was not actually disabled. We review the judgment of the district court *de novo*, *see Taylor v. Small*, 350 F.3d 1286, 1290 (D.C. Cir. 2003), but consider first whether, as the amicus maintains, the ADAA applies retroactively.

## A. Retroactivity

In *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Supreme Court reaffirmed the judicial presumption against applying a statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to [completed] transactions." *Landgraf* and its sequelae prescribe a process for determining whether a statute applies to past conduct. We first look for an "express command" regarding the temporal reach of the statute, *id.*, or, "in the absence of language as helpful as that," determine whether a "comparably firm conclusion" can be reached upon the basis of the "normal rules of [statutory] construction." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). If we cannot reach a firm conclusion, then we turn to judicial default rules, asking whether applying the statute "would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'" *Id.* (quoting *Landgraf*, 511 U.S. at 278). If applying the statute would have such a disfavored effect, then we do not apply it absent clear evidence in the legislative history that the Congress intended retroactive application. *See Landgraf*, 511 U.S. at 280; *Summers v. U.S. Dep't of Justice*, No. 07-5315, 2009 WL 1812760, at *3 (D.C.

Cir. June 26, 2009); *Koch v. SEC*, 177 F.3d 784, 786 n.3 (9th Cir. 1999).

The amicus does not argue the Congress clearly answered the retroactivity question. Instead, he contends the Congress left to the courts the task of distinguishing between provisions of the ADAA that "alter settled law," and therefore are subject to the presumption against retroactivity, and those that merely clarify the law and therefore guide our interpretation of the ADA. *See Cookeville Reg'l Med. Ctr. v. Leavitt*, 531 F.3d 844, 849 (D.C. Cir. 2008); *see also Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380–81 (1969). Chief among the clarifying provisions, he argues, is § 4 of the ADAA, which newly designates lifting, bending, and working as MLAs and directs us to construe the ADA "in favor of broad coverage of individuals." 122 Stat. at 3555 ("major life activities include, but are not limited to, ... lifting, bending, ... and working").

The Authority argues the Congress, by delaying the effective date of the statute, mandated purely prospective application of the ADAA. *See id.* § 8, 122 Stat. at 3559 ("This Act and the amendments made by this Act shall become effective on January 1, 2009"). In the alternative the Authority argues the presumption against retroactivity applies because the ADAA changed settled law by repudiating what the Supreme Court described in *Toyota* as the "demanding standard for qualifying as disabled." 534 U.S. at 197; *see* ADAA § 2(b)(4), 122 Stat. at 3554 (stating one purpose of ADAA is to overrule *Toyota*); *id.* § 4(a), 122 Stat. at 3555 (directing courts to interpret the phrase "'substantially limits' ... consistently with the findings and purposes of the [ADAA]").

We agree with the Authority's principal point: By delaying the effective date of the ADAA, the Congress clearly indicated the statute would apply only from January 1, 2009 forward. If the Congress intended merely to "clarify" the ADA, then its decision to delay the effective date would make no sense; it would needlessly have left the ADA unclear for the more than three months between enactment of the ADAA on September 25, 2008 and its going into effect on January 1, 2009. Nothing on the face of the statute indicates the Congress intended this peculiar scenario. If, in contrast, the Congress intended the Amendments to have a purely prospective effect, then its decision to delay the effective date of the ADAA makes sense. Indeed, we can imagine no reason for the Congress to have delayed the effective date other than to give fair warning of the Amendments to affected parties and to protect settled expectations. That is why the Congress delayed the effective date of the Pregnancy Discrimination Act (PDA) with respect "to certain benefit programs" at the same time it overruled *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), in which the Court had held Title VII of the Civil Rights Act of 1964 permitted an employer to exclude pregnant employees from coverage under a disability benefit plan. *See AT&T Corp. v. Hulteen*, 129 S.Ct. 1962, 1967, 1971 (2009). Looking to the effective date and to the legislative history, the Supreme Court concluded the Congress had used "the language of prospective intent" in enacting the PDA. *Id.* at 1971–72. The ADAA, which similarly contains a delayed effective date, similarly indicates the Congress's prospective intent.

Without drawing our attention to any particular case, the amicus contended at oral argument that precedent precludes ending the inquiry at the first step of the *Landgraf* analysis. Having surveyed the decisions of the Supreme Court, we see that, although the Congress's decision to delay the effective

date of a statute generally indicates it intends prospective only effect, when an alternative and time-neutral explanation of the delay appears on the face of the statute, a court indeed must proceed to the second step, as the Supreme Court has twice done when determining the temporal reach of provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IRA). *See Fernandez-Vargas*, 548 U.S. at 42–45; *INS v. St. Cyr*, 533 U.S. 289, 317–20 (2001). In § 309(a) of the IRA the Congress delayed the effective date of Title III-A, while in § 309(b) it expressly linked that delay to a deadline for the Attorney General to promulgate new regulations. Pub. L. No. 104-208, div. C, 110 Stat. 3009-546, 3009-625 ("Attorney General shall first promulgate regulations to carry out this subtitle by not later than 30 days before the title III-A effective date"). Thus, § 309 on its face indicated the Congress delayed the effective date in order "to allow the Attorney General to prepare for the substantial changes caused by the [IRA] and to promulgate regulations." *Fernandez-Vargas*, 548 U.S. at 51 n.4 (Stevens, J., dissenting). Because it is plausible that the Congress might decide to give an agency time to promulgate regulations but nonetheless intend that the statute and its implementing regulations be applied retroactively, § 309(b) provides a time-neutral explanation for the delayed effective date in § 309(a) of the IRA. In the ADAA, by contrast, the Congress "express[ed its] expectation" that the EEOC would revise its regulation, § 2(b)(6), 122 Stat. at 3554, but did not indicate it was delaying the effective date in order to allow time for the agency to do so. In short, the delayed effective date in the ADAA, unlike that in the IRA, admits of only one explanation: The Congress intended the statute to have prospective only effect.

A statute also may be ambiguous if, notwithstanding a delayed effective date, it has a provision that seems to call for

its retroactive application. *See Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1178 (D.C. Cir. 1994) (Wald, J., dissenting) (so concluding with respect to Foreign Sovereign Immunities Act (FSIA)); *cf. Republic of Austria v. Altmann*, 541 U.S. 677, 697–98 (2004) (preamble to FSIA suggests retroactive application). In this regard, we note the Congress titled the ADAA "An Act [t]o restore the intent and protections of the [ADA]" and undertook generally to "reinstat[e] a broad scope of protection," § 2(b)(1), 122 Stat. at 3554, but those indicia of purpose are actually time-neutral, and do not countermand the clear indication of intent inherent in the deferred effective date. As the Supreme Court noted in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 305, 311 (1994), a "restorative purpose may be relevant" to the retroactivity question but the choice to overrule a judicial decision "is quite distinct" from the choice to do so retroactively. In sum, when the Congress has delayed the effective date of a substantive statute that could in principle be applied to conduct completed before its enactment, we presume the statute applies only prospectively.

Even if the delayed effective date were not dispositive in this case, the ADAA would be subject to the presumption against retroactivity. In repudiating the rule of construction described in *Toyota* and adding to the ADA a list of illustrative MLAs, ADAA § 4(a), 122 Stat. at 3555 ("The definition of disability in this Act shall be construed in favor of broad coverage of individuals"), the Congress broadened the class of employees entitled to reasonable accommodation. *See id.* § 2(a)(5) & (b)(1), 122 Stat. at 3553, 3554. To hold the Authority's refusal to accommodate Lytes was unlawful under the new, broader ADAA but not under the pre-Amendments ADA, therefore, would be to give the ADAA the disfavored retroactive effect. *See Landgraf*, 511 U.S. at 280. The amicus has not pointed to any clear indication in

either the ADAA or its legislative history that the Congress intended the Amendments to have that effect. We therefore hold the ADAA does not govern Lytes's suit for retrospective damages, as have the other courts that have considered the question. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 470 n.8 (5th Cir. 2009) (ADAA does not apply retroactively (citing *Rivers*, 511 U.S. at 313)); *Moran v. Premier Educ. Group, LP*, 599 F. Supp. 2d 263, 271–72 (D. Conn. 2009) (collecting cases holding ADAA does not apply retroactively).

B. Merits

Under the law prior to its amendment, we observed that the "ADA promotes equal opportunity for the disabled, but only after [the] ... 'demanding standard' [of *Toyota*] is met." *Singh v. George Washington Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1102 (D.C. Cir. 2007). Lytes's burden under that standard is to show he suffered from an impairment that substantially limited him in an MLA when the Authority allegedly discriminated against him. *See* 42 U.S.C. § 12102(2)(A) (2000); *Haynes v. Williams*, 392 F.3d 478, 481–82 (D.C. Cir. 2004); *Kocsis v. Multi-Care Mgmt.,* 97 F.3d 876, 884 (6th Cir. 1996) (employee must be disabled when discrimination occurred).

There is no dispute that Lytes had a physical impairment at the relevant time. The amicus maintains Lytes's condition substantially limited him in the already-recognized MLA of performing manual tasks, *see Toyota*, 534 U.S. at 201–02, and in lifting, bending, and working, which the amicus urges us to hold are MLAs within the meaning of the pre-Amendments ADA. The Authority argues Lytes has forfeited those arguments (except with respect to bending) because he did not raise them in the district court. Lytes's allegations

regarding actual disability were contained in a single paragraph:

> Careful daily living is to ensure there will be no further damage to his back area. The pain is there but it is manageable. However, the restrictions in not being able to bend consistently, carry heavy weights, reach or twist not only applies to any work restrictions, but also restriction on life chores. He can not or should not mow the lawn for long periods, no squatting or bending to repair any pipes at home. He has become adapt in getting dressed so as not bend. He has attempted to improve his condition by daily walks, and drives but not long distances.

Even assuming these unadorned allegations were sufficient to preserve the amicus's arguments, we may still affirm the judgment of the district court. *See Tax Analysts v. IRS*, 495 F.3d 676, 680 (D.C. Cir. 2007) (court may assume argument is preserved when doing so does not alter outcome).

Upon that assumption, the amicus still must show, as he acknowledges, that Lytes was substantially limited, when compared to an average person, because his condition either prevented him from or significantly restricted him in lifting, bending, performing manual tasks, or working. *See Toyota*, 534 U.S. at 195–97; *Desmond v. Mukasey*, 530 F.3d 944, 955 (D.C. Cir. 2008) (noting court has "held that plaintiffs must show that their limitation was substantial 'as compared to the average person in the general population'"). We consider the "nature and severity," the "duration or expected duration," and the "permanent long term impact, or the expected permanent or long term impact of" Lytes's impairment. *Desmond*, 530 F.3d at 956.

In opposing the Authority's motion for summary judgment, Lytes alleged only that he was "restrict[ed] in not being able to bend consistently, carry heavy weights, reach or twist." The amicus goes beyond that allegation and points to record evidence that he argues creates a triable issue. The Authority argues Lytes's failure to point the district court to any evidence is fatal to the amicus's argument on appeal. *See Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) (district court is not "obliged to sift through" record for genuine issue of material fact in dispute).

Under Rule 56 of the Federal Rules of Civil Procedure, the Authority had "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record it "believe[d] demonstrate[d] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because the Authority clearly did so, Rule 56 required Lytes, who would have had the burden of proof at trial, to respond with "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). Therefore, Lytes should have "designat[ed] and referenc[ed] triable facts" accompanied by "appropriate references to the record before the District Court." *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). This he failed utterly to do.

Although we have cautioned that "treating an issue as conceded for failure to respond fully to a motion for summary judgment 'should only be applied to egregious conduct,'" *Burke v. Gould*, 286 F.3d 513, 518 (2002), Lytes's conduct meets that standard. He described his disability — which he alleged resulted from general restrictions upon "work" and "life chores" — in a single paragraph without any reference to record evidence supporting his description, presented a

"counter-statement of material facts" that failed to discuss his functional capacity at the time of the alleged discrimination, and even controverted the two pieces of evidence the amicus would now have us deem decisive.

The amicus relies primarily upon the results of the February 2003 FCE and secondarily upon Lytes's deposition, in which he asserted he could not, in September 2003, shower, put on his shoes, or use the toilet "without assistance." In the district court, however, Lytes impugned the FCE by (1) alleging he "continued to improve" between February 2003 and September 2003, when he was refused accommodation; (2) arguing "the use of the FCE is extremely suspect"; and (3) questioning whether it would be admissible at trial. Although the amicus strives to deny Lytes repudiated the FCE in the district court, it is clear Lytes did just that, which exceeds the default of the nonmovant in *Burke*. *See id.* at 516. The amicus may not now reverse course on Lytes's behalf. *Cf. United States v. Ginyard*, 215 F.3d 83, 88 (D.C. Cir. 2000) (defendant may not complain on appeal about error he invited in district court). Lytes also controverted his own deposition by alleging in his opposition to summary judgment that by April 2001 he "felt he had recuperated" from previously debilitating pain that had interfered with his ability to bathe, cook, and clean, whereas in his deposition he had claimed he told the WASA's risk manager he needed help in September 2003 when bathing, using the toilet, and putting on his shoes. We will not allow Lytes to "sandbag" the district court by considering evidence Lytes not only failed to cite but indeed contradicted. *See USAir, Inc. v. U.S. Dep't of Transp.*, 969 F.2d 1256, 1260 (D.C. Cir. 1992).

Therefore, like the district court we consider only the evidence of Lytes's condition available when the Authority refused to return him to light duty and terminated his

employment in March 2004. *See* 527 F. Supp. 2d at 60–61. In September 2003 Dr. Tozzi had found Lytes could perform light duty, which permitted him to lift up to 10 to 20 pounds occasionally and to do "some bending." Although Lytes reported "ongoing discomfort in [his] back" and occasional tingling in his legs, he could perform "lateral bending of 20 [degrees] without much in the way of pain other than tightness" and could walk without limping. By December 2003 Dr. Tozzi found Lytes "had no significant limitation" due to back pain, and in January 2004 he opined that Lytes's "impairment [was] not great when rated based upon neurological deficit, sensory impairment, pain, and stiffness" and that Lytes had "limited, but acceptable and functional motion of the spine."

Under the "demanding standard" of *Toyota*, 534 U.S. at 197, it is clear upon these facts that summary judgment was appropriate. The contemporaneous evidence of Lytes's impairment creates no triable issue as to whether he had a substantial limitation with respect to lifting. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998) (10 to 20 pound limitation does not create triable issue); *see also Marinelli v. City of Erie*, 216 F.3d 354, 363–64 (3d Cir. 2000) (10 pound limitation does not create triable issue); *cf. Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1116 (D.C. Cir. 2001) (citing approvingly *Williams v. Channel Master Satellite Sys.,* 101 F.3d 346, 349 (4th Cir. 1996) (25 pound limitation does not create triable issue)). Nor could a reasonable jury find Lytes suffered a severe long-term limitation in bending when compared to an average person. *See Colwell*, 158 F.3d at 644 (testimony that plaintiff cannot "bend over 'for long periods'" too vague to create triable issue). With respect to performing manual tasks, Lytes admitted he had improved from the time when he "was unable to perform every day tasks." The evidence of his

minimal physical limitations in late 2003 and early 2004 does not in any way indicate Lytes's impairment "prevent[ed] or severely restrict[ed him] from doing activities that are of central importance to most people's daily lives." *Toyota*, 534 U.S. at 198; *see Holt v. Grand Lake Mental Health Ctr.,* 443 F.3d 762, 766 (10th Cir. 2006). Lytes's limitations, even when considered together as the amicus urges, are simply too insubstantial to preclude summary judgment on his claim to have been substantially impaired in an MLA.

Finally, with respect to working, in its motion for summary judgment the Authority cited *Duncan*, 240 F.3d at 1114–15 (assuming working is MLA and holding employee is disabled from working if he is precluded from "'substantial class' or 'broad range' of jobs otherwise available to him"), and pointed to evidence showing Lytes was not "preclude[d] ... from all work." Because Lytes failed to respond with evidence indicating the range of jobs available to him, much less argue that range was narrow because of his impairment, summary judgment was appropriate with respect to working.[*]

## III. Conclusion

By enacting the ADAA, the Congress broadened the class of persons entitled to protection under the ADA. Because the Congress delayed the effective date of the ADAA, we presume, in the absence of any legislative indication to the contrary, that it does not apply retrospectively to Lytes's case. Applying the pre-

---

[*] We need not and therefore do not resolve the parties' disputes over the timeliness of Lytes's EEOC charge, *see Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982), and over Lytes's ability to perform the essential functions of a plant operator, *see Duncan*, 240 F.3d at 1114 (stating elements of ADA claim).

Amendments ADA, we hold Lytes failed to meet his burden of identifying record evidence creating a triable issue as to whether he was actually disabled as that standard was described in *Toyota*.

For the foregoing reasons the judgment of the district court is

*Affirmed*.