# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed: April 22, 2011

No. 10-1070

NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

GROWTH ENERGY AND NATIONAL BIODIESEL BOARD,
INTERVENORS

———

Consolidated with 10-1071

———

On Petition for Rehearing En Banc

———

Before: SENTELLE*, *Chief Judge*, and GINSBURG, HENDERSON*, ROGERS, TATEL, GARLAND, BROWN*, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

## **O R D E R**

Petitioners' petition for rehearing en banc, the responses thereto, and the reply were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is

**ORDERED** that the petition be denied.

### **Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Jennifer M. Clark
Deputy Clerk

* Circuit Judge Henderson did not participate in this matter.

* A statement by Circuit Judge Brown, with whom Chief Judge Sentelle joins, dissenting from the denial of the petition for rehearing en banc is attached.

BROWN, *Circuit Judge*, joined by SENTELLE, *Chief Judge*, dissenting from the denial of rehearing en banc: It is a commonplace of administrative law that "[a]n agency may not promulgate retroactive rules absent express congressional authority." *Nat'l Min. Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002). We have previously speculated, "[t]here may be an exception for situations in which the 'statute prescribes a deadline by which particular rules must be in effect' and the 'agency misses that deadline.'" *Sierra Club v. Whitman*, 285 F.3d 63, 68 (D.C. Cir. 2002) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 224–25 (1988) (Scalia, J., concurring)). But until this case, we have never so held. The panel opinion holds that an agency may promulgate fully retroactive regulations absent express congressional authority, as long as "implicit" authority for the retroactivity may be discerned in the structure of the relevant statute. *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 163 (D.C. Cir. 2010). I respectfully disagree. The exception adopted here conflicts with the Supreme Court's clear-statement rules, usurps legislative power, renders statutory deadlines precatory, multiplies uncertainty for regulated entities, and encourages lethargic administration. For these reasons, we should have reheard this case *en banc*.

I

Congress enacted the Energy Independence and Security Act ("EISA") on December 19, 2007, to increase the volume of renewable fuel mandated for annual use by the Energy Policy Act of 2005 ("2005 Act") and to expand the class of fuels subject to those standards. The EISA required the EPA to promulgate implementing regulations within a year. 42 U.S.C. § 7545(o)(2)(A)(i). EPA missed this deadline by more than a year, publishing on March 26, 2010, its Final Rule which became effective on July 1, 2010. 75 Fed. Reg. 14,670.

To compensate for its delayed implementation of the EISA's more stringent standards, the EPA rolled the 2009 volume requirement into the 2010 requirement, requiring the industry to use the combined volume of renewable fuel by the 2010 compliance date, February 8, 2011. *Id.* at 14,676. The panel assumed, without deciding, that the EPA's regulation had primary, not secondary, retroactive effects. *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 162 (D.C. Cir. 2010). In other words, the court accepted the petitioners' view that the regulation altered "the past legal consequences of past actions," not just the value of past investments made in reliance on the old rule. *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 670 (D.C. Cir. 2009).

Although the statute contains no "express congressional authority" for retroactive rulemaking, *Nat'l Min. Ass'n*, 292 F.3d at 859, the court nevertheless concluded that "any primary retroactive effects" of the EPA's Final Rule "were implicitly authorized under the EISA," 630 F.3d at 162, because some degree of retroactivity was foreseeable in any event. Even if the EPA had published its regulations on the statutory deadline, the Final Rule, including the renewable fuel standard for 2009, would not have gone into effect until February 18, 2009, after the 60-day Congressional Review period mandated by 5 U.S.C. § 801(a)(3). But the EISA specified that the implementing regulations should "ensure" the statutory volumes are used each year "[r]egardless of the date of promulgation." 42 U.S.C. § 7545(o)(2)(A)(iv). Thus, the court reasoned, Congress anticipated at least a month and a half of potential retroactive application. *Nat'l Petrochemical*, 630 F.3d at 163. The court also looked to a provision of the 2005 Act that set a default renewable fuel standard for the year 2006 in the event the EPA failed to promulgate regulations by the 2005 Act's statutory deadline.

*Id.* (citing 42 U.S.C. § 7545(o)(2)(A)(iv)). Even though the EISA contains no similar provision for 2009, the court interpreted the 2005 Act's default rule as a sign that Congress, when it passed the EISA in 2007, contemplated the EPA might miss its deadline. *Id.* According to the court, this and the "regardless of the date" provision reflected "Congress' focus on ensuring the annual volume requirement was met regardless of EPA delay." *Id.* The court concluded that these structural features of the EISA and its predecessor gave the EPA "clear albeit implicit authority . . . to apply both the 2009 and 2010 volume requirements in the 2010 calendar year." *Id.*

II

In upholding the EPA's retroactive rulemaking absent express congressional authority, the panel opinion relies on an atypical concurring opinion by Justice Scalia. *Nat'l Petrochemical*, 630 F.3d at 162–63 (quoting *Bowen*, 488 U.S. at 224–25 (Scalia, J., concurring)). Writing only for himself, Justice Scalia speculated,

> It may even be that implicit authorization of particular retroactive rulemaking can be found in existing legislation. If, for example, a statute prescribes a deadline by which particular rules must be in effect, and if the agency misses that deadline, the statute may be interpreted to authorize a reasonable retroactive rule despite the limitation of the APA.

488 U.S. at 224–25. The Supreme Court has never endorsed this view. Although we have treated as "substantially authoritative" the distinction Justice Scalia drew between primary and secondary retroactive effects in the same opinion, *see Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585,

588 (D.C. Cir. 2001) (citing *Bergerco Canada v. U.S. Treasury Dep't*, 129 F.3d 189, 192–93 (D.C. Cir. 1997)), we have never, until now, adopted his hypothetical exception to the general rule against primary retroactivity. In *Sierra Club v. Whitman* we only repeated Justice Scalia's speculation that "[t]here may be an exception for situations in which the 'statute prescribes a deadline by which particular rules must be in effect' and the 'agency misses that deadline.'" 285 F.3d 63, 68 (quoting *Bowen*, 488 U.S. at 224–25).

Neither Justice Scalia in *Bowen* nor our court in *Whitman* had occasion to decide the lawfulness (or the wisdom) of allowing retroactive rulemaking on the basis of implicit congressional authorization. When the opportunity finally presented itself in this case, several considerations should have led us to reject that hypothesis.

A

The court's exception to the categorical rule against retroactive rulemaking conflicts with the Supreme Court's clear-statement rules. The enactments of Congress itself will not be given retroactive effect absent a demonstration of "clear congressional intent" in the form of an "unambiguous directive" or "express command." *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)); *see Lindh v. Murphy*, 521 U.S. 320, 325 (1997) (describing *Landgraf*'s "clear-statement rule"); *Plaut v. Spendthrift Farm*, 514 U.S. 211, 237 (1995) ("[S]tatutes do not apply retroactively unless Congress expressly states that they do.").[1] And "[i]t is axiomatic that an

---

[1] We recently suggested in dicta that a statute could be given retroactive effect if that result were indicated by "clear evidence in the legislative history." *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 939–40 (D.C. Cir. 2009). We received that notion from the

administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen*, 488 U.S. at 208. It follows that an agency lacks "power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*

The panel opinion, however, finds in the EISA's structure "implicit" authority for retroactive rulemaking that falls far short of a clear statement. 630 F.3d at 162, 163. In so doing, we permit an agency to seize by implication a power that Congress itself may wield only by "unambiguous directive." *Martin*, 527 U.S. at 354.

B

The court's missed-deadline exception invades the legislative function, since it is for Congress to decide how and when legislative regulations will go into effect. *See Bowen*, 488 U.S. at 208. The first branch of government is not helpless. If Congress were not content to leave the status quo in place until the EPA eventually promulgated its Final Rule, Congress could have included its own interim rules in the statute. *See, e.g.*, 26 U.S.C. §§ 179D(f), 7807(a). This is effectively what Congress did in the 2005 Act by including a

---

Ninth Circuit. *Id.* (citing *Koch v. SEC*, 177 F.3d 784, 786 n.3 (9th Cir. 1999)). The Supreme Court's unambiguous restatements of *Landgraf* cast the Ninth Circuit's view into grave doubt, and we have never given a statute retroactive effect on the basis of legislative history alone. Indeed, less than a month before *Lytes*, we had expressed skepticism over the use of legislative history to justify retroactivity. *See Summers v. DOJ*, 569 F.3d 500, 504 (D.C. Cir. 2009) (rejecting the appellant's argument for retroactive application of an attorney's fee provision based on legislative history and observing "the general problem that neither a committee nor a single Senator can speak for 'the Congress'").

default renewable fuel standard for the year 2006. 42 U.S.C. § 7545(o)(2)(A)(iii). Or Congress could have authorized rulemaking without notice-and-comment procedures. *See Air Transp. Ass'n of Can. v. FAA*, 254 F.3d 277 (D.C. Cir. 2001). Or Congress could have allowed the agency to promulgate interim-final rules before undertaking notice-and-comment procedures. *See* Michael Asimow, *Interim-Final Rules: Making Haste Slowly*, 51 ADMIN. L. REV. 703 (1999); *see, e.g.*, 26 U.S.C. § 9833. Or Congress could have used some combination of interim statutory rules and interim agency rules to meet its legislative goals with minimal delay. *See, e.g.*, 6 U.S.C. § 944(a)(2), (4)(B). Where Congress has relied instead on the default notice-and-comment procedures of the APA, courts should not infer congressional intent to permit retroactive rulemaking.

C

There are other reasons to doubt the wisdom of the purely hypothetical exception Justice Scalia theorized to the categorical rule against retroactive rulemaking. *Bowen*, 488 U.S. at 224 (Scalia, J., concurring). In the first place, any exception at all would seem to conflict with his textual emphasis on "*future effect*" as the defining trait of a "rule" under the APA. *Id.* at 217 (quoting 5 U.S.C. § 551(4)); *see id.* ("The only plausible reading of the italicized phrase is that rules have legal consequences only for the future."). This exception in particular seems ill advised from the perspective of good administration. In practice, it lets agencies like the EPA get away with violating explicit congressional time limits by promulgating untimely regulations with retroactive effects. The missed-deadline exception creates perverse incentives, rewarding dilatoriness and making regulatory burdens even less predictable. If an agency can accomplish tomorrow what the statute says to do today, Congress will

lose a common and effective means of directing agency priorities.

Of course, an agency does not lose all power to act when a statutory deadline expires. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 172 (2003). But it does not follow that an agency acquires retroactive rulemaking power by missing a deadline. Justice Scalia's dissent in *Barnhart* suggests he may no longer adhere to the exception he hypothesized in *Bowen*. Unlike the *Barnhart* majority, Justice Scalia emphasized "the surprise of new (and retroactive) liabilities" imposed by the tardy agency action. *Id.* at 184 (Scalia, J., dissenting). If he had applied his missed-deadline exception to the facts in *Barnhart*, Justice Scalia would have approved the retroactivity he perceived in the agency's post-deadline action. By applying his hypothetical exception in an actual case, we venture where Justice Scalia himself has declined to go.

### D

The panel opinion leaves in doubt whether, as Justice Scalia suggested in *Bowen*, the existence of a statutory deadline is sufficient by itself to justify retroactivity when the agency fails to meet the deadline, *see Nat'l Petrochemical*, 630 F.3d at 162 (quoting *Bowen*, 488 U.S. at 224–25 (Scalia, J., concurring)), or whether other evidence of congressional intent is necessary, *see id.* at 163. To the extent the panel opinion purports to rely on other structural features of the EISA for implicit authority, it grasps at straws.

The panel opinion notes the 60-day Congressional Review period for major rules could have resulted in retroactive application of a timely rule to January and part of February 2009, even if the Final Rule were promulgated by

the December 2008 deadline. 630 F.3d at 163; *see* 5 U.S.C. § 801(a)(3). But just because a statutory "provision on its face permits some form of retroactive action" does not mean Congress intended to grant general "authority for the retroactive promulgation of . . . rules." *Bowen*, 488 U.S. at 209; *see Administrators of the Tulane Educ. Fund v. Shalala*, 987 F.2d 790, 797–98 (D.C. Cir. 1993) (That a statute "by its very terms, is intended to have some retroactive effect . . . does not answer the separate question of whether [a particular implementing regulation] is improperly retroactive."). Thus, the potential for a timely renewable fuel rule to have limited retroactive effects does not imply Congress authorized retroactive application of an untimely rule to the entire year. If anything, it suggests Congress contemplated the possibility of retroactivity and was content to restrict its scope.

As the panel opinion points out, the 2005 Act, which the EISA amended, contained a default fuel standard for the year 2006 in case the EPA failed to promulgate regulations by the statutory deadline.[2] But the 2005 Act's inclusion of a now-obsolete default standard proves nothing about what Congress intended in 2007 when it enacted the EISA. When that time came, Congress declined to update the old default provision to correspond with its new delegation of rulemaking authority. The opinion concludes somewhat hesitantly that the absence of a default standard in the EISA "*appears* explained by the fact that Congress was expanding an existing renewable fuel program and EPA could, as it did, leave in place the [prior] regulatory program . . . until the revised regulations under the EISA . . . were finalized." *Nat'l*

---

[2] 42 U.S.C. § 7545(o)(2)(A)(iv) ("If the Administrator does not promulgate regulations under clause (i), the percentage of renewable fuel in gasoline sold or dispensed to consumers in the United States, on a volume basis, shall be 2.78 percent *for calendar year 2006*." (emphasis added)).

*Petrochemical*, 630 F.3d at 163 (emphasis added). But the EISA's omission can just as easily be interpreted as evidence that the 2007 Congress did not anticipate any delay from an agency now experienced with administering renewable fuel standards.

## III

We once said "it would . . . be odd to conclude that Congress implicitly entrusted a laggard agency with the authority to devise a remedy for its own untimeliness." *Linemaster Switch Corp. v. EPA*, 938 F.2d 1299, 1303 (D.C. Cir. 1991). That is precisely what the panel concludes in this case. We have no authority to grant an agency a free pass to promulgate retroactive rules just because it can't or won't get the job done within the time Congress mandates. That will be, I fear, the ultimate effect of the panel's opinion. The better course would have been to reaffirm the clear-statement rule declared by the *Bowen* majority and repeated in our most recent pronouncements on retroactive rulemaking. "An agency may not promulgate retroactive rules absent express congressional authority." *Nat'l Min. Ass'n*, 292 F.3d at 859.

I respectfully dissent from the denial of rehearing *en banc*.