FILED
United States Court of Appeals
Tenth Circuit

October 14, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRENT L. RHODES,

       Plaintiff - Appellant,

v.

LANGSTON UNIVERSITY;
LANGSTON UNIVERSITY BOARD OF
REGENTS; DR. JOANN HAYBERT,
President of Langston University; DR.
CAROLYN T. KORNEGAY, Dean of the
School of Nursing of Langston University,

       Defendants - Appellees.

No. 10-6234
(D.C. No. 5:09-CV-00862-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO,** Circuit Judge, **MATHESON,** Circuit Judge, and **FREUDENTHAL,**
District Judge.[**]

Brent Rhodes sued Langston University, its Board of Regents and related

university officials (Langston) for discriminating against him because of alleged

disabilities while he was a student in Langston's nursing program. For purposes of this

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Nancy D. Freudenthal, Chief United States District Judge for the
District of Wyoming, sitting by designation.

appeal, Rhodes claims violations of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Section 504).

The district court held Rhodes could not establish a prima facie discrimination claim under Section 504 and the ADA because certain claims were barred under the applicable two year statute of limitations, and because Rhodes had not offered the required evidence of a disability that substantially limits a major life activity. Rhodes argues the district court erred in finding Rhodes is not disabled under Section 504 or the ADA, or in not finding a retroactive application of the 2008 Amendments to the ADA. Rhodes also argues the district court erred in barring claims under the statute of limitations.

We conclude the district court correctly refused to give retroactive application to the 2008 Amendments to the ADA and correctly found that Rhodes is not disabled as a matter of law. We also conclude the district court correctly applied the statute of limitations to bar certain claims. Exercising jurisdiction under 28 U.S.C. § 1291, we accordingly AFFIRM.

**I. Background**

In 2000, Rhodes was in a serious car accident that resulted in a partial left leg amputation and a traumatic brain injury. Aplt. App., Vol. 2, p. 464. Rhodes was fitted for and wears a prosthesis. *Id*. He claims that his below-the-knee amputation limits the major life activities of walking and caring for himself. Rhodes also claims that his traumatic head injury limits the major life activity of learning.

In 2006, Rhodes had neuropsychological testing to evaluate deficiencies and recommend accommodations for his learning impairment. Aplt. App., Vol. 3, pp. 480-489. The tests evaluated Rhodes' intellectual functioning against an estimate of what his functioning should have been based on his demographic characteristics. *Id*. at 482. Rhodes' demographic characteristics are identified in the report as a 31-year-old Caucasian male who graduated from high school and is attending classes toward a degree in nursing. *Id*.

Based on these demographic characteristics and without considering any impairment, the evaluator assigned Rhodes an estimate of intellectual functioning in the high average range. *Id*. However, Rhodes' neuropsychological evaluation placed him consistently in the average range of intellectual functioning with some variability. *Id*. The evaluator noted impairment in the areas of reading comprehension, writing to dictation, sustained attention, verbal and nonverbal/visual memory, speed of information processing, visual perception, and concept formation. *Id*. at 483. The evaluator also noted that Rhodes' neurocognitive strengths allow him to compensate fairly well for several areas of weaknesses. *Id*. The evaluator recommended various accommodations to aid learning. *Id*.

In 2006, Rhodes enrolled at Langston, a land grant university that receives federal funds. Rhodes provided his neuropsychological evaluation and requested accommodations for his learning impairment. Langston's ADA Officer submitted notice to Rhode's professors that Rhodes requested the following accommodations: 1) extended time on tests, 2) extra time on reading, writing and computer assignments, 3) permission

to utilize a volunteer note taker, 4) copies of course syllabi to be issued in advance of the course, and 5) special consideration for spelling error. Aplt. App., Vol. 2, p. 225.

Rhodes successfully completed his first three semesters at Langston. Notwithstanding this fact, Rhodes claims Langston's professors denied some of the requested accommodations for his learning impairment. Rhodes also complains that his physical access to classrooms was difficult due to the location of classes in areas of campus that were not readily accessible. In the spring semester of 2008, Rhodes encountered difficulties in two of his clinical courses. Facing failing grades in these two clinical courses, Rhodes withdrew from Langston. Aplt. App., Vol. 2, pp. 466-470. He filed this lawsuit on August 12, 2009.

## II. Analysis

We review a grant of summary judgment de novo to determine whether any genuine issues of material fact are in dispute and, if not, whether the district court correctly applied the substantive law. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 792 (10th Cir.1998). For all issues we review de novo, "applying the same standards that the district court should have applied." *Jensen v. Solvay Chemicals*, 625 F.3d 641, 650 (10th Cir. 2010) (quotations omitted). Because this appeal is from a grant of summary judgment to Langston, we view the evidence and all reasonable inferences that might be drawn therefrom in the light most favorable to Rhodes. *Berry & Murphy P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). "On those issues for which [he] bears the burden of proof at trial, the nonmovant must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element

-4-

essential to [his] case in order to survive summary judgment." *Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) (quotations omitted). "We can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir. 2009) (quotations omitted).

## A. Retroactive Application of ADAAA

Rhodes argues for a retroactive application of the ADA Amendments Act of 2008 (ADAAA) to the facts of this case. The ADAAA was enacted on September 25, 2008 and became effective January 1, 2009. *Lytes v. DC Water and Sewer Authority*, 572 F.3d 936, 940 (10th Cir. 2009). All conduct and issues giving rise to Rhodes claims concluded in May, 2008 when Rhodes withdrew from Langston. Rhodes filed suit on August 12, 2009, after the ADAAA took effect.

Rhodes argues under the tests set out in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) and *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696 (1974), the district court should have considered the ADAAA to be clarifying rather than affecting substantive obligations and rights of the parties. Under this analysis, Rhodes argues the district court should have applied the ADAAA as it was the law in effect at the time the case was filed and the district court rendered its decision, and the district court erred in considering Rhodes' prosthesis in analyzing Rhodes' ability to walk or care for himself.

The ADAAA was enacted with the explicit purpose of rejecting certain standards and reasoning of several Supreme Court opinions[1] regarding interpretation of the ADA and to "reinstat[e] a broad scope of protection to be available under the ADA." PL 110-325, 122 Stat 3553 (September 25, 2008). Among these changes was a rejection of an analysis "that whether an impairment substantially limits a major activity is to be determined with reference to the ameliorative effects of mitigating measures." *Id.*

The overwhelming number of cases examining this issue have held that the ADAAA should not be applied retroactively, and all circuit courts have so held. *See Lawson v. Plantation General Hosp., L.P.*, 704 F.Supp.2d 1254, 1272-74 (S.D. Fla. 2010) (collecting cases). The reasoning of these cases is persuasive, which includes concerns that congress did not make it clear the ADAAA should be retroactive; there would be "retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before [the ADAAA's] enactment," *Lytes*, 572 F.3d at 940 (quotations omitted); and the delayed effective date of January 1, 2009 has no reasonable "time-neutral" alternative explanation other than an intent to provide prospective effect and "give fair warning of the [ADAAA] to affected parties to protect settled expectations." *Id.* at 940-41.

While Rhodes argues there would be no disfavored retroactive consequence because Langston always had an obligation toward disabled students, such an argument begs the question of whether Rhodes is disabled. We conclude the ADAAA is not

---

[1] *Sutton v. United Air Lines,* 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky v. Williams,* 534 U.S. 184 (2002).

clarifying but rather is a substantive change in settled law. As such, we conclude the district court did not err in refusing to give the ADAAA retrospective application to the facts of this case.

## B. Discrimination Claims Under the ADA

To establish a prima facie case under the ADA before the 2008 amendments, a plaintiff must first prove he or she "is a qualified individual with a disability." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir.1999). Merely having either a medical condition or an impairment does not make one disabled for purposes of the ADA. Therefore, the first issue for consideration is whether the conditions presented in the case - Rhodes' amputated leg and his traumatic brain injury - constitute disabilities under the ADA. To satisfy the ADA's definition of disability, a plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment *substantially limits* one or more of those activities."[2] *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir.2007) (emphases added) (citation omitted); *see also* 42 U.S.C. § 12102(2).[3]

A plaintiff must "articulate with precision" both his impairment and the major life activity it substantially limits. *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1218

_____

[2]Rhodes argued before the district court that Langston admitted he had disabilities, and did not specifically argue that he was regarded as disabled by Langston. Because this is not raised as error, we will not consider the issue of whether Rhodes meets the definition of disabled because he was regarded as having an impairment by Langston. 42 U.S.C. § 12102(1)(C).

[3]Before the 2008 amendments, this section in the statute was 12102(2), and after it became and now is 12102(1).

(10th Cir. 2010) (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir.2003) (quoting *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1232 (10th Cir.1999))).  It is undisputed between the parties that Rhodes has physical and mental impairments and that walking, caring for one's self and learning are major life activities.  However, the question is whether any of these activities have been substantially limited by Rhodes' impairments.

The ADA does not define the term "substantially limits."  However, "substantial[ ]" is an inherently relative term, one that demands some further standard of measure - as do the synonyms "'considerable' or 'to a large degree,'" offered by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 196, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).  In speaking of the major life activity of performing manual tasks, the Court required that an impairment "prevent[ ] or severely restrict[ ] the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681 (emphasis added).  It added that the statutory text must "be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197, 122 S.Ct. 681.  Consistent with this precedent, we have construed the phrase "substantially limiting" to require an impairment that renders an individual either unable or significantly restricted in ability to perform a major life activity "compared to the average person in the general population." *Johnson,* 594 F.3d at 1218.

As noted by the district court, the sole assessment provided by Rhodes in support of his contention of a substantial limitation is the affidavit and report of Leanne Buttross, Ph.D., a neuropsychologist who examined Rhodes in 2006.  This report placed Rhodes

-8-

consistently in the average range of intellectual functioning with some variability. The district court did not err in concluding that the affidavit and evaluation, combined with the fact that Rhodes was a successful student for three semesters at Langston, does not show that Rhodes is substantially limited in the major life activity of learning.[4]

Further, the neuropsychological evaluation is a comparison of Rhodes to an estimate of a fictional person sharing his demographic characteristics. Aplt. App., Vol. 3, p. 482. These demographic characteristics represent the cognitive abilities of a 31-year-old man with a high school degree who is attending college courses in nursing, rather than any comparison to the cognitive abilities of persons in the general population. Rhodes' neuropsychological evaluation does not answer the question of whether his impairment substantially limits Rhodes' ability to learn as a whole for purposes of daily living, as compared to most people. Rather, it is a comparison to a fictional person sharing his demographic characteristics and its purpose was to identify potential accommodations to help Rhodes with demanding classroom and clinical nursing courses.

The ADA is designed to address the problems that "historically, society has tended to isolate and segregate individuals with disabilities"; that "people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially,

---

[4]We would note that Rhodes was a successful student even though he was not consistently provided accommodations. Rhodes complains that, in the fall of 2006, his statistics professor denied him additional time in taking tests and he could not find a volunteer notetaker. In the fall of 2007, Rhodes complains he was not allowed additional time to prepare for the final exam and the course syllabus he was provided did not match the textbook. He obtained passing grades in both courses. Aplt. App., Vol. 2, pp. 466-467.

vocationally, economically, and educationally"; and that "individuals with disabilities are a discrete and insular minority who have been ... relegated to a position of political powerlessness." 42 U.S.C. § 12101(a)(2), (6), (7). Congress found that discrimination denies this group "the opportunity to compete on an equal basis . . . and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity"; the ADA therefore seeks to offer the disabled "equality of opportunity, full participation, independent living, and economic self-sufficiency." *Id.* § 12101(a)(8)-(9).

A plaintiff who, despite an impairment, can participate in all major life activities at the level of the average person in the general population neither is denied "independent living and economic self-sufficiency," nor burdens society with "dependency and nonproductivity," nor falls within the kind of "isolate[d] and segregate[d]" minority described by the statute's text. Therefore, Rhodes' learning impairments are not substantially limiting for purposes of qualifying as a disability under the ADA.

Rhodes also argues that it was error for the district court to conclude, even with his prosthesis, that he was not substantially limited in walking and caring for himself. Rhodes identifies his two surgeries, arguing that they were the result of his overuse of the prosthesis to attend classes. Further, Rhodes claims to have some difficulty in the major life activity of caring for himself. Finally, he argues that when a leg is missing, there should be no debate regarding whether a man is disabled.

For substantially the same reasons identified by the district court, we conclude Rhodes' amputation and use of a prostheses constitute a physical impairment that is not

substantially limiting. As noted by the district court, Rhodes did not present any evidence to determine the impact of his amputation and how his ability to walk using the prosthesis compares with the walking ability of the general population. Further, any temporary condition, such as a wheel chair or crutches post-surgery, does not qualify as a disability. *See Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000) (the ADA was not designed to apply to temporary conditions). We will not address Rhodes' argument relating to the overuse of his prostheses which resulted in two surgeries because of our conclusion that these complaints are barred by the applicable two-year statute of limitations. Finally, as to Rhodes' argument that he is substantially limited in caring for himself, because of insufficient briefing we will affirm the district court on this issue.

## C. Discrimination Claims Under Section 504

To establish a prima facie case under Section 504, a plaintiff must first demonstrate he or she is an "otherwise qualified individual with a disability." *See* 29 U.S.C. § 794(a); *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir.2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 114, 172 L.Ed.2d 240 (2008). Because the language of disability in Section 504 mirrors that of the ADA, our analysis of Rhodes' Section 504 claim is the same as it was for the ADA. *See Miller ex rel. S.M. v. Bd. of Ed. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir.2009) (Section 504 and the ADA involve the same substantive standards); *Cummings v. Norton*, 393 F.3d 1186, 1190 n. 2 (10th Cir.2005) (same). Given that Rhodes failed to offer evidence showing how his impairments substantially limit a major life activity compared to the average person in the general population, his attempt to establish a prima facie Section 504 claim fails as well.

**D. The Statute of Limitations**

The district court concluded that Rhodes' accessibility claims[5] occurring prior to August 12, 2007 are barred by Oklahoma's two-year statute of limitations period.[6] Rhodes acknowledges his claims are subject to a two year statute of limitations. However, he argues none of Langston's discriminatory acts can be tied to specific dates as all were on-going events which only concluded after he was forced out of the nursing program in 2008. We disagree.

Rhodes complains of specific classroom accessibility and overheating problems occurring in the fall of 2006, which resulted in an infection from overuse of his prosthesis. Aplt. App., Vol. 2, p. 266. Rhodes had surgery in December 2006 to address this infection. *Id.* Rhodes also complains of classes he took in the spring of 2007, which were located in buildings without suitable ramps or handicap accessible doors. *Id.* This again resulted in overuse of his prosthesis and another surgery in the spring of 2008. *Id.* at 467. These complaints represent discrete accessibility issues rather than a continuation by Langston of related and repetitive unlawful acts or practices. Therefore, the district court did not err in barring Rhodes' claims which accrued prior to August 12, 2007, that arose from the alleged failure by Langston to provide program accessibility.

---

[5]Given our conclusion that Rhodes does not suffer a learning disability under the ADA, we need not address Rhodes' contention that Langston violated the ADA by failing to accommodate his learning impairment prior to August 12, 2007.

[6]Since neither the Rehabilitation Act nor the ADA sets forth a statute of limitations, the Oklahoma two year statute of limitations applies. Okla. Stat. 12, § 95(3); *Alexander v. Oklahoma*, 382 F.3d 1206, 1212 n.1 (10th Cir.2004).

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for Langston.

Entered for the Court

Nancy D. Freudenthal
Chief District Judge