**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRY LATHAM,

      Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant-Appellee.

No. 11-2217
(D.C. No. 1:09-CV-00643-MV-ACT)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Terry Latham appeals the district court's order granting

summary judgment to Defendant-Appellee Board of Education of the

Albuquerque Public Schools ("APS") on Ms. Latham's claim for an alleged

violation of the New Mexico Human Rights Act ("NMHRA").  Ms. Latham

worked as a substitute teacher in APS for approximately fifteen years, ending in

late 2008.  In that year, APS ordered Ms. Latham to stop bringing her registered

service dog, "Bandit," to school with her during her teaching assignments.  APS

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

denied Ms. Latham's subsequent, formal request to continue bringing Bandit to school. Claiming that Bandit's presence was a substantial aid to her health in light of her chronic asthma, and that APS's denial was a violation of her rights under state and federal law, Ms. Latham sued APS. The district court entered summary judgment in favor of APS, and Ms. Latham filed this timely appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

**I**

Ms. Latham suffers from asthma. She worked for APS as a substitute teacher for approximately fifteen years. From January to May 2008, Ms. Latham brought Bandit, her registered service dog, to school with her during her teaching assignments. According to APS, it first became aware that Ms. Latham was bringing Bandit to school in March 2008. After initially issuing a plan allowing Ms. Latham to bring Bandit to work, APS rescinded the plan and directed Ms. Latham not to bring Bandit.

In June 2008, Ms. Latham filed a discrimination charge against APS with the New Mexico Human Rights Division. On December 5, 2008, the Division issued a "Determination of Probable Cause" that APS had discriminated against Ms. Latham based on her disability. Three days later, APS suspended Ms. Latham for one week for bringing Bandit to work.

Ms. Latham filed suit against APS in New Mexico state court alleging

-2-

discrimination and retaliation, in violation of the NMHRA; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; the Rehabilitation Act, 29 U.S.C. §§ 701–796l; and 42 U.S.C. § 1983. APS removed the case to federal court, and then moved for summary judgment on the discrimination claims. The district court noted that claims of discrimination under the ADA and Rehabilitation Act involve identical inquiries. Contrary to Ms. Latham's averments, the court determined that the standards of the ADA Amendments Act of 2008 ("ADAAA") were not applicable. The ADAAA was enacted on September 25, 2008, and became effective on January 1, 2009. *See* ADAAA, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008) ("This Act and the amendments made by this Act shall become effective on January 1, 2009."). Because the alleged violations in this case took place in 2008, and because, in the district court's view, the ADAAA is not applicable retroactively, the court made its summary judgment determinations based on the pre-amendment ADA.

The district court concluded, based on its review of the evidence in the record, that Ms. Latham is not disabled under the ADA or the Rehabilitation Act. It granted summary judgment on the ADA and Rehabilitation Act claims for that reason, and granted summary judgment on the § 1983 claim because no discrimination could be found absent the demonstration of a disability. On the NMHRA state-law claim, the district court determined that New Mexico courts apply the same standards set forth in the ADA. Accordingly, having determined

that Ms. Latham is not disabled under the ADA, the district court found that she is not disabled under the NMHRA.

The district court granted APS's motion in full, stating that Ms. Latham had "failed to provide evidence that she is disabled under the Rehabilitation Act, the ADA, or the NMHRA." Aplt. App. at 175 (Mem. Op. & Order, filed Sept. 21, 2010). On appeal, Ms. Latham challenges only the district court's adverse ruling regarding her NMHRA claim.

## II

## A

We review the district court's order granting summary judgment de novo, and we draw all reasonable inferences in favor of the nonmoving party—in this case, Ms. Latham. *See Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). "[S]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).[1]

---

[1]     Ms. Latham contends that we should adopt New Mexico's practice of "view[ing] summary judgment with disfavor, preferring a trial on the merits." *Romero v. Philip Morris, Inc.*, 242 P.3d 280, 287 (N.M. 2010). Asserting that "New Mexico courts consider summary judgment to be nothing short of a drastic remedy to be used only with great caution," Aplt. Reply Br. at 2 (citing *Pharmaseal Labs., Inc. v. Goffe*, 568 P.2d 589, 592 (N.M. 1977)), Ms. Latham contends that "[t]his Court should review this case with that . . . state interest in
(continued...)

-4-

**B**

On appeal, Ms. Latham avers for the first time that the district court should have followed an NMHRA-specific standard when evaluating her qualification for protection under that state statute. Specifically, she states that "the district court followed the wrong standard," Aplt. Opening Br. at 10, and that "[t]he district court should have recognized [that] the issue is not whether Ms. Latham is

---

[1]      (...continued)
mind, and regard summary judgment as would a New Mexico state court," *id.* at 3.

Ms. Latham's argument—that we should emulate the New Mexico state courts by following their summary-judgment standards—fails for at least two reasons. First, it is waived because she presents it for the first time in her appellate reply brief. *See, e.g.*, *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."). Second, even if we were to reach the substance of the argument, we would conclude that it is wholly without merit and foreclosed by controlling precedent. Specifically, federal law is the source of the operative summary judgment standard, even when addressing a state-law claim. *See, e.g.*, *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) ("[A]lthough we will look to Utah law to determine what elements the plaintiffs must prove at trial to prevail on their claims, we will look exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." (citation omitted)); *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1194–95 (10th Cir. 2002) ("[A] federal court sitting in diversity will be guided by federal-law standards governing summary judgment procedure."); *see also Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965) ("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act."); *cf. Flood v. ClearOne Commc'ns. Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (noting that "federal law governs the procedural questions when a preliminary injunction may issue and what standards of review we apply").

disabled, but whether she has a *serious medical condition*," *id.* at 12 (emphasis added). But before the district court, Ms. Latham was not simply mute when it came to the standard that the district court should employ when analyzing the NMHRA claim—she explicitly used *the ADA standard* for "disability" as a plug-in for the NMHRA. *See, e.g.*, Aplt. App. at 106 (Resp. to Mot. for Summ. J., filed June 8, 2010) ("[B]ecause Congress has fixed the ADA, the New Mexico Supreme Court would follow the new version [of the ADA].").

Because Ms. Latham argued before the district court that a version of the federal ADA standard applied to her NMHRA claim—rather than an allegedly distinct state-law standard—her new argument on appeal that a different, state-law standard applies is waived.[2] We therefore do not reach the merits of the argument. Nor do we reach Ms. Latham's contention that, *if* the "serious medical condition" standard were applied, there would be disputed issues of material fact

---

[2] Even if Ms. Latham's argument is not waived because she affirmatively relied upon a federal ADA standard—rather than a state-law standard—before the district court, we still decline to consider it for another reason. Because Ms. Latham never raised the "serious medical condition" theory, in any form, before the district court, her argument on appeal is forfeited. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory . . . wasn't raised before the district court, we usually hold it forfeited."). Ms. Latham does not argue for plain-error review, and "the failure to argue for plain error . . . surely marks the end of the road for an argument for reversal not first presented to the district court," *id.* at 1131. "[Even if a party's] arguments were merely forfeited before the *district court*, [the] failure to explain . . . how they survive the plain error standard waives the arguments in *this* court." *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010).

that would preclude summary judgment under the NMHRA.

## C

Ms. Latham claims that the district court proceeded improperly by "consider[ing] Ms. Latham's medical evidence," and "then weigh[ing] it and [finding] it insufficient to support a determination that she is disabled." Aplt. Opening Br. at 13. While it is correct that in summary-judgment determinations, the court does "not weigh the evidence or make credibility determinations," *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008), Ms. Latham's argument is misguided.

The true gravamen of her concern appears to be that the court actually considered the summary judgment record, without blindly accepting her bald averments. The pages of the district court's decision that Ms. Latham alleges support her claim, *see* Aplt. Opening Br. at 13, clearly reflect the court's "[c]areful review of the evidence." Aplt. App. at 170. The district court determined that APS was entitled to summary judgment because the evidence that Ms. Latham produced fell short of satisfying the factual predicates for her claim. In particular, the court noted that "Ms. Latham has advanced no evidence demonstrating that her asthma is severe." *Id.* at 168; *see id.* ("Ms. Latham has not presented any evidence regarding the *nature or severity* of her impairment."). The court refused to rely on Ms. Latham's bald assertions to validate her claim that her medical condition qualified her for relief under the NMHRA. *See id.* at

-7-

168 n.1 ("The Court . . . cannot conclude based on Ms. Latham's *unsupported assertions* that her condition constitutes severe as opposed to mild asthma." (emphasis added) (internal quotation marks omitted)); *id.* at 168 (noting that "Ms. Latham admitted in her deposition that no doctor has diagnosed her with severe asthma" and that she had relied instead on her own assessment of her condition).

The district court's approach here reflects a sound understanding of its obligations in the summary judgment context. On summary judgment, a district court is tasked with reviewing the record (or at least those portions of the record cited by the parties). It is not required to credit a nonmovant's bald assertions marshaled in favor of her claim—like Ms. Latham's assertions here. A nonmovant is entitled only to the reasonable inferences arising from *the evidence*. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) ("The very purpose of a summary judgment action is to determine whether trial is necessary. Thus, the nonmoving party must, at a minimum, direct the court to *facts* which establish a genuine issue for trial."); *accord Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 30 (1st Cir. 2007) ("In an employment discrimination case, a plaintiff's ability to survive summary judgment depends on his ability to *muster facts* sufficient to support an inference of discrimination. He cannot rely exclusively on bald assertions, unsupported conclusions, or optimistic surmises." (emphasis added)); *see also T&M Distrib., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (noting that plaintiff "cannot defeat summary judgment and obtain

-8-

discovery with just bald assertions and speculation of wrongful conduct"); *cf. Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) ("Reference to facial assertions in a complaint are not sufficient to overcome Rule 56 summary judgment when the record as a whole reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). Accordingly, we reject Ms. Latham's contention that the district court erred in applying the governing summary judgment standards.

**D**

**1**

The parties agree that all events relevant to Ms. Latham's claim took place in 2008. Nevertheless, Ms. Latham avers that the district court erred by *not* analyzing her state-law claim under the ADAAA—the ADA as amended, with a January 1, 2009, effective date. She claims that the "New Mexico Supreme Court would look [to the ADAAA] for guidance when construing the NMHRA," Aplt. Opening Br. at 16, even though all conduct related to that NMHRA claim took place prior to the ADAAA's effective date.[3]

---

[3]        For purposes of disposing of this appeal, because the district court analyzed Ms. Latham's NMHRA claim under the pre-amendment ADA, *and* because Ms. Latham contends that the New Mexico Supreme Court would look to the ADAAA (rather than the pre-amendment ADA) for guidance, we assume without deciding that *one of* the two ADA standards (either the ADAAA or the pre-amendment ADA) would operate as the principal touchstone for the New Mexico Supreme Court in addressing the merits of a NMHRA claim.

No New Mexico court has addressed this question, so we are making an "*Erie*-guess." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) (italics added). That is, we must "predict how New Mexico's highest court would rule." *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000); *see also Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir.1994) (explaining that the objective is to ascertain and apply state law so that the result obtained is the result that would be reached in the state court; a federal court must in essence predict how the highest state court would rule).

When making an *Erie* guess, we are "free to consider *all resources available*, including decisions of [New Mexico] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001) (emphasis added) (quoting *Schuchmann*, 235 F.3d at 1225) (internal quotation marks omitted); *see MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1265 (10th Cir. 2006) (considering "the general weight and trend of authority" in discerning how the highest court of the State at issue might rule).

As explicated below, we predict that the New Mexico Supreme Court would hold that the ADAAA does *not* apply retroactively. In brief, the New Mexico Supreme Court has looked to federal courts' decisions for guidance in interpreting the NMHRA. And those courts have overwhelmingly adopted the

view that the ADAAA does *not* apply retroactively. Furthermore, were the New Mexico Supreme Court to adopt this view, it would be in line with general judicial default principles of statutory interpretation endorsed alike by federal and New Mexico courts.

## 2

The ADAAA states, "This Act and the amendments made by this Act shall become effective on January 1, 2009." Pub. L. No. 110-325, § 8, 122 Stat. 3559. As its formal title suggests, the ADAAA was intended to "restore the intent and protections" of the ADA after the ADA's reach had been limited by certain Supreme Court decisions. Pub. L. No. 110-325, 122 Stat. 3553. Generally speaking, the ADAAA was intended to remove certain constraints on the definition of "disability" imposed by the Court's construction of the ADA. *See, e.g.*, *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011) (noting that "Congress amended the ADA in 2008 'to correct what it viewed as an overly restrictive interpretation of the statute's terms that had been adopted by the Supreme Court'" (quoting *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010))); *Kemp v. Holder*, 610 F.3d 231, 236 (5th Cir. 2010) (agreeing with the plaintiff that the ADAAA was intended by Congress to abrogate the Supreme Court's holding that whether an impairment constitutes a "disability" must be considered with reference to the "mitigating effects" of

-11-

health-care aids); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009) ("The ADAAA amends the ADA in important respects, particularly with regard to the definition and construction of 'disability' under the statute."); *see also Rhodes v. Langston Univ.*, 462 F. App'x 773, 776–77 (10th Cir. 2011) (discussing congressional intent in enacting the ADAAA); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 834 (10th Cir. 2011) (same).

However, all events relevant to Ms. Latham's claim occurred before the ADAAA's enactment in January 1, 2009. "When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." *Landgraf v. USI Film Prods*., 511 U.S. 244, 280 (1994). Nevertheless, "when the Congress has delayed the effective date of a substantive statute that could in principle be applied to conduct completed before its enactment," the federal courts "presume the statute applies only prospectively." *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940 (D.C. Cir. 2009).

In addition to the effective date, default rules of statutory interpretation under federal law weigh against retroactive application. As the Supreme Court set out in *Landgraf*:

> When . . . the statute contains no . . . express command [prescribing its proper reach], the court must determine whether

the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, *increase a party's liability for past conduct, or impose new duties with respect to transactions already completed*. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280 (emphasis added). Ms. Latham seeks application of the ADAAA under her perception that it will expand the scope of APS's liability. *See, e.g.*, Aplt. Opening Br. at 18 (noting that under the ADAAA "Ms. Latham's condition must be considered in the absence of mitigating measures, such as a service dog, inhaler, or any treatment."). APS does not question this view of the statute's effect. *See* Aplee. Br. at 27 ("[A]pplying the ADAAA to pre-2009 conduct . . . would impose, upon APS, liability for actions which were compliant with ADA at the time APS took such actions."). Accordingly, we have no reason to do so. In this circumstance, absent clear congressional intent favoring retroactivity, federal law would dictate that we presume that the ADAAA does not apply to this case.

**3**

In interpreting its own Human Rights Act, the New Mexico Supreme Court has "indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the act." *Trujillo v. N. Rio Arriba Electric Co-op, Inc.*, 41 P.3d 333, 338 (N.M. 2001). With the caveat that its "reliance on the methodology developed in the federal courts . . . should not be interpreted as an

indication that [it has] adopted federal law," *id.* (quoting *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990)) (internal quotation marks omitted), the *Trujillo* court noted that for the claim before it, "the closest federal counterpart would be the [ADA]," *id.* The court indicated a willingness to reference not only relevant Tenth Circuit precedent, but also the germane precedent of other federal courts. *See id.* at 338–41.

In *Wegner v. Hair Products of Texas*, a case exploring when statutory amendments should be applied retroactively, the New Mexico Court of Appeals followed the holding of *Landgraf*, relying on its proposition that retroactive application affecting substantial rights would be improper if such application attaches "new legal consequences to events completed before its enactment." 110 P.3d 544, 548 (N.M. Ct. App. 2005) (citing *Landsgraf*, 511 U.S. at 270). Further, the New Mexico Supreme Court has endorsed the general default rules of retroactive statutory application: "[T]he general rule is that statutes apply prospectively unless the [l]egislature manifests clear intent to the contrary," *Gill v. Pub. Emps. Ret. Bd. of Pub. Emps. Ret. Ass'n of N.M.*, 90 P.3d 491, 494 (N.M. 2004) (quoting *Gallegos v. Pueblo of Tesuque*, 46 P.3d 668, 680 (N.M. 2002)) (internal quotation marks omitted).

The New Mexico Supreme Court's inclination to look to the decisions of the federal courts in construing the NMHRA suggests that it would *not* conclude

-14-

that the ADAAA should be given retroactive effect. In this regard, although we have offered little in the way of supportive reasoning, we have concluded in this circuit that the ADAAA does *not* apply retroactively. Specifically, in *Hennagir v. Utah Department of Corrections*, 587 F.3d 1255, 1261 n.2 (10th Cir. 2009), we stated in a footnote, "The ADA has been substantially amended via the ADA Amendments Act of 2008. It is unnecessary to consider the effect of those changes, given that [plaintiff] was terminated in 2005." With little more than a citation to *Hennagir*, as apparently controlling authority, we have thereafter taken the position that the ADAAA does not operate retroactively. *See Carter*, 662 F.3d at 1144 ("Because the ADAAA does not operate retroactively, we apply the law as it stood prior to the enactment of the ADAAA." (citation omitted)); *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1217 n.7 (10th Cir. 2010); *see also Johnson v. Sedgwick Cty. Sheriff's Dep't*, 461 F. App'x 756, 759 n.2 (10th Cir. 2012) ("Although this definition has changed with the ADA Amendments Act of 2008 (ADAAA), we apply the prior definition and interpretive case law because Mr. Johnson's ADA claim arose before the ADAAA's effective date (January 1, 2009).").

This outcome is consistent with the predominant view among federal courts. In an unpublished opinion that addresses the ADAAA-retroactivity issue, a panel of this court explained that "[t]he overwhelming number of cases examining this issue have held that the ADAAA should not be applied

-15-

retroactively, and all circuit courts have so held," and noted that "[t]he reasoning of these cases is persuasive."[4] *Rhodes*, 462 F. App'x at 777; *see also Lander v. ABF Freight Sys., Inc.*, 459 F. App'x 89, 92 n.2 (3d Cir. 2012) ("All circuits that have considered this issue have uniformly concluded that the ADAAA does not apply retroactively."); *Lawson v. Plantation Gen. Hosp., L.P.*, 704 F. Supp. 2d 1254, 1273 (S.D. Fla. 2010) (collecting cases).

Based on the foregoing, we predict that the New Mexico Supreme Court would hold that the ADAAA should *not* be given retroactive application. The New Mexico Supreme has looked to federal precedent in interpreting the ADA for guidance in construing NMHRA. *See Trujillo*, 41 P.3d at 339. And the clear "general weight and trend of authority," *Stuart*, 235 F.3d at 1225, among federal courts is *not* to apply the ADAAA retroactively, *see Rhodes*, 462 F. App'x at 777. And for the New Mexico Supreme Court to reach such a conclusion would be consistent with its apparently general view on the retroactivity question, under which statutes are presumed to operate *prospectively* absent the legislature's clear

---

[4]    The panel noted multiple reasons for its ruling, including (1) "[C]ongress did not make it clear the ADAAA should be retroactive"; (2) there would be "retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before [the ADAAA's] enactment"; and (3) "the delayed effective date of January 1, 2009 has no reasonable 'time-neutral' alternative explanation other than an intent to provide prospective effect and 'give fair warning of the [ADAAA] to affected parties to protect settled expectations.'" *Rhodes*, 462 F. App'x at 777 (alterations in original) (quoting *Lytes*, 572 F.3d at 940–41).

manifestation of a contrary intent. *See, e.g.*, *Gill*, 90 P.3d at 494.[5] We therefore

reject Ms. Latham's invitation to hold that the New Mexico Supreme Court would

(in the context of her NMHRA discrimination claim) apply the ADAAA

retroactively to APS's 2008 conduct.

_____

[5]     Our conclusion is arguably bolstered by an examination of the New Mexico Human Rights Division's regulation defining "serious medical condition." As APS notes, *see* Aplee. Br. at 17–18, the New Mexico Supreme Court has looked to the Division's regulations for guidance in resolving claims under the NMHRA. *See Trujillo*, 41 P.3d at 338; *see also Sabella v. Manor Care, Inc.*, 915 P.2d 901, 902 n.1 (N.M. 1996). The pertinent regulation states that the NMHRA's "serious medical condition" classification should be taken to mean a "serious health-related impairment . . . which substantially limits one or more of an individual's major life activities." N.M. Code R. 9.1.1.7(GG) (Oct. 1, 2001). This definition closely tracks the pre-amendment ADA's definition of "disability." *See* 42 U.S.C. § 12102(2) (2006) (defining disability as a "physical or mental impairment that substantially limits one or more of the major activities of such individual"). Significantly, the language of this regulation has not been revised to incorporate the changes wrought by the ADAAA. In faithfully applying the law of New Mexico in resolving Ms. Latham's NMHRA claim, it seems improbable that the New Mexico Supreme Court would select a federal touchstone or guidepost that would evince a significant departure from the current state of New Mexico law—as conceived by the agency charged with processing claims under the NMHRA—that is, the Division. The ADAAA—but not the pre-amendment ADA—embodies such a departure.

## III

For the foregoing reasons, we **AFFIRM** the judgment of the district court.[6]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[6] In light of Ms. Latham's properly preserved challenges on appeal, we have no occasion to opine on whether Ms. Latham actually is "disabled" under any standard of the ADA, or whether she has a "serious medical condition" for purposes of New Mexico law.