FILED
United States Court of Appeals
Tenth Circuit

September 19, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CLARICE J. SANCHEZ,

       Plaintiff–Appellant,

v.

No. 11-2118

TOM VILSACK, Secretary, United States
Department of Agriculture,

       Defendant–Appellee.

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:07-CV-00706-LH-DJS)**

Leslie Deak, Law Offices of Leslie Deak, Washington, DC, for the Plaintiff-Appellant.

David N. Williams (Kenneth J. Gonzales with him on the brief), Office of the United
States Attorney, Albuquerque, New Mexico, for the Defendant-Appellee.

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

**LUCERO**, Circuit Judge.

       Clarice Sanchez, a long-time secretarial employee of the United States Forest

Service ("Forest Service"), suffered irreversible brain damage after falling at work. As a result of her injury, Sanchez lost the left half of her field of vision. She requested a hardship transfer to Albuquerque, New Mexico, where she could better access ongoing medical treatment. After the Forest Service declined to accommodate her request, she brought suit under the Rehabilitation Act, 29 U.S.C. § 791. The district court granted summary judgment in favor of the Forest Service, concluding that Sanchez was not disabled within the meaning of the Act. We disagree and hold that Sanchez has raised a genuine issue of material fact regarding her disability. On appeal, the Forest Service urges us to affirm summary judgment on an alternative ground. However, we decline this invitation because we conclude that transfer accommodations for the purpose of medical treatment or therapy are not unreasonable per se. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

## I

While newly stationed in the Lufkin, Texas Forest Service office, Sanchez fell down a flight of stairs at work. She suffered irreversible brain damage, which caused a complete homonymous hemianopsia—a permanent injury to the nerves that transmit images from the eyes to the brain. As a result of this injury, Sanchez has only 50 percent of the total visual field in each eye. She is unable to see objects to the left line of center when her eyes are focused ahead. According to the American Medical Association, a complete homonymous hemianopsia is as disabling as a visual acuity loss to 20/200. Sanchez's vision loss is permanent and cannot be improved by lenses or surgery.

After seven weeks of recovery, Sanchez returned to work. Shortly thereafter, she requested a hardship transfer to the Albuquerque, New Mexico office because no doctors in Lufkin were qualified to provide specialized therapy to help her adjust to her injury. Sanchez also explained that she needed the support of her family and friends in Albuquerque and noted the lack of public transportation in Lufkin.

Although neither party contends that Sanchez was unable to perform her job, the record suggests that she experienced difficulties at work due to her condition. Sanchez testified that she struggled with reading, in part because her condition causes her to focus on the center of the page rather than starting at the left side of the page. Sanchez found reading numbers especially difficult and had to check her assignments several times to avoid errors. Because Sanchez could not tolerate bright lighting, the Forest Service provided her with special lights and an office in which she could adjust them. In addition, Sanchez suffered eye strain which prevented her from working on the computer or reading for more than forty-five minutes at a time. Transportation to the office was also a challenge. Family and friends initially helped to drive Sanchez; but she eventually began driving herself to work despite her doctor's orders, relying on back roads and otherwise avoiding traffic.

Sanchez's immediate supervisor in Lufkin made several inquiries about open positions in Albuquerque, to no avail. In September 2003, the Forest Service assigned Sanchez to a 120-day detail in Albuquerque. During this time, Sanchez saw a specialist who helped her learn techniques to make reading easier. But Forest Service employees in

Albuquerque felt that Sanchez was disruptive and inefficient. They informed the Deputy Regional Forester that Sanchez's performance was unsatisfactory and at least one recommended that she not be permanently assigned to the Albuquerque office. Sanchez was not selected for either of two equivalent-pay positions in Albuquerque for which she met the minimum qualifications according to an agency computer system.

Back in Lufkin, Sanchez's work environment allegedly began to deteriorate. According to Sanchez, her supervisor and coworkers mocked her brain injury saying that she was "crazy," "not all there," and "not right in the head." She also alleges that her supervisor made gestures to this effect. Thus, in 2006, Sanchez took a pay cut to accept an accounting technician position with the Forest Service in Albuquerque.

She then filed this suit in federal district court, alleging that the Forest Service discriminated against her in violation of the Rehabilitation Act by failing to accommodate her and by subjecting her to a hostile work environment. After a period of discovery, both parties moved for summary judgment. In its motion, the Forest Service argued that Sanchez's impairment did not substantially limit her so as to qualify as a disability under the Rehabilitation Act. Sanchez provided deposition testimony and an affidavit describing the impact of the hemianopsia on her ability to see. She also submitted expert medical testimony from Dr. Clark Watts based on a review of her medical records. The district court, however, agreed with the Forest Service that Sanchez was not substantially limited by her impairment. It accordingly granted summary judgment in favor of the defendant and denied Sanchez's motion. Because the court determined that Sanchez was

- 4 -

not disabled within the meaning of the Act, it did not resolve the Forest Service's argument in response to Sanchez's motion that the requested transfer accommodation fell outside of the scope of the Rehabilitation Act. Sanchez now appeals the district court's decision to grant summary judgment in favor of the Forest Service. [1]

## II

The Rehabilitation Act prohibits the federal government from discriminating against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a); McGeshick v. Principi, 357 F.3d 1146, 1149 (10th Cir. 2004). Part of the government's obligation is to provide reasonable accommodations to disabled employees. To prevail on a failure-to-accommodate claim a plaintiff must demonstrate that: (1) she is disabled; (2) she is "otherwise qualified"; and (3) she requested a plausibly reasonable accommodation. See Woodman v. Runyon, 132 F.3d 1330, 1344 (10th Cir. 1997).[2] We review de novo the district court's determination that Sanchez failed to create a genuine dispute of fact on the first prong. Croy v. COBE Labs, 345 F.3d 1199, 1201 (10th Cir.

---

[1] Although Sanchez states that she is appealing from the district court's grant of summary judgment on her hostile work environment claim, she does not address this claim specifically in her brief. Thus, this argument is waived. Therrien v. Target Corp., 617 F.3d 1242, 1252-53 (10th Cir. 2010).

[2] Regardless of whether suit is filed under the Rehabilitation Act or under the Americans with Disabilities Act ("ADA"), the substantive standards for determining whether an individual is disabled are the same. See White v. York Int'l Corp., 45 F.3d 357, 360 & n.5 (10th Cir. 1995); see also Canales v. Nicholson, 177 F. App'x 834, 838 n.3 (10th Cir. 2006) (unpublished).

2003).  In so doing, we evaluate all evidence and reasonable inferences that might be drawn in the light most favorable to Sanchez.  Id.

## A

A "disability" is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A); see 29 U.S.C. § 705(9)(B) (referring to the ADA definition for certain Rehabilitation Act purposes).  To prove that she is disabled, Sanchez must:  (1) have a recognized impairment; (2) identify one or more appropriate major life activities; and (3) show that the impairment substantially limits one or more of those activities.  Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003).  "Whether a plaintiff has met the first two requirements are questions of law for the court.  But whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury."  Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1142 (10th Cir. 2011) (citation omitted).

There is no dispute that Sanchez has a recognized impairment or that the life activity she has identified—seeing—falls within the Act.  See Sutton v. United Air Lines, Inc., 130 F.3d 893, 900 (10th Cir. 1997) (defining "major life activity" to include "seeing"); 29 C.F.R. § 1630.2(i)(1)(i) (same).  We thus focus on whether Sanchez has demonstrated at least a genuine dispute of material fact as to whether her condition "substantially limits" her ability to see.  We conclude that she has done so.

An impairment is substantially limiting when it renders an individual significantly restricted in her ability to perform a major life activity "compared to the average person

- 6 -

in the general population." Johnson v. Weld Cnty., 594 F.3d 1202, 1218 (10th Cir. 2010) (quotation omitted).  In conducting this analysis, courts must take into account:  (1) the nature and severity of the impairment; (2) the expected duration of the impairment; and (3) the permanent or long term impact resulting from the impairment.  Pack v. Kmart Corp., 166 F.3d 1300, 1305-06 (10th Cir. 1999); see also 29 C.F.R. § 1630.2(j)(4)(i) ("[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.").

As this definition suggests, it is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity.  Cf. Rhodes v. Langston Univ., 462 F. App'x 773, 779 (10th Cir. 2011) (unpublished) (amputee who relied on a prosthesis did not present any evidence about its effect on his ability to walk).  At the summary judgment stage, Sanchez must point to some evidence showing that her impairment limits her seeing or some other major life activity.  Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999).  For a visually impaired plaintiff, this might include evidence of "loss of depth perception," id., "degree of visual acuity," "age at which [the individuals] suffered their vision loss," "extent of . . . compensating adjustments in visual techniques," or the "ultimate scope of restrictions on

visual abilities." Id. at 566. Nonetheless, Sanchez's burden is not an "onerous" one. Id. at 567 (explaining that an individual with monocular vision will "ordinarily" be disabled under the Act). The ADA and Rehabilitation Acts "address[] substantial limitations on major life activities, not utter inabilities." Id. at 565 (quoting Bragdon v. Abbott, 524 U.S. 624, 641 (1998)).

Applying these principles, we conclude that summary judgment was inappropriate. Sanchez provided a great deal of evidence attesting to the manner in which homonymous hemianopsia limited her ability to see as compared to the average person. Sanchez testified that her field of vision when looking straight ahead was half of what she could see prior to the injury. By way of example Sanchez explained in her affidavit that "when [she] look[s] at things, like an adding machine, [she] cannot see the entire machine." Sanchez additionally averred—and medical experts confirmed—that her vision loss is permanent and cannot be improved by lenses or surgery. Dr. Watts stated that individuals who suffer from a homonymous hemianopsia find it difficult to accommodate for their loss of vision, instead ignoring the side of their bodies on which the vision is lost.

According to the Forest Service, Sanchez can correct for her impairment by turning her head.[3] But turning one's head merely shifts one's field of vision. Even with

---

[3] In Sutton v. United Air Lines, Inc., the Supreme Court affirmed this circuit's practice of considering potential mitigating measures, such as medications, in evaluating whether an impairment substantially limits a major life activity. 527 U.S. 471, 488

Continued . . .

such adjustments, Sanchez's field of vision remains significantly limited in comparison to the average person. Thus, unlike some visually impaired individuals for whom corrective lenses are a solution, the record does not reveal any mitigating measures available to Sanchez that would allow her to "function identically to individuals without a similar impairment." Sutton, 527 U.S. at 488.

This evidence is sufficient to send to the jury the question of whether Sanchez was "substantially limited" in her ability to see as compared to the average person. However, Sanchez also submitted evidence showing that her limited ability to see rendered other aspects of her life more "difficult, slower, and more dangerous." She described challenges in reading and performing basic financial math. She testified to her tendency "to injure [her]self while performing basic cleaning and maintenance" at home, and explained that she relied on her daughter to fly from Albuquerque to Lufkin every few weeks to assist her with shopping and other tasks. She also presented evidence that it was unsafe for her to drive, and that she did so—against doctor's orders—only when and where she could avoid traffic.

Concluding that Sanchez was not disabled as a matter of law, the district court relied on the fact that she drives despite doctor's orders, reads with some difficulty, is

(1999). Congress amended the ADA in 2008 "to correct what it viewed as an overly restrictive interpretation of the statute's terms" in Sutton. Carter, 662 F.3d at 1144 (quotation and citations omitted); see ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Because the ADA Amendments Act does not operate retroactively, however, "we apply the law as it stood prior to the enactment." Carter, 662 F.3d at 1144.

"able to care for herself," and "walks and bicycles on a regular basis."  This analysis misses the mark.  The question is not whether Sanchez can do many of the same activities a person who is not visually impaired takes for granted.  Rather, we must focus on the major life activity Sanchez has identified—seeing—and determine whether she has shown "the [substantial] extent of the limitation" on that activity "in terms of [her] own experience."  Albertson's, Inc., 527 U.S. at 567.  We conclude that Sanchez has produced ample evidence that "the manner in which" she sees is substantially limited as compared to the average individual.  29 C.F.R. § 1630.2(j)(4)(i).[4]

**B**

In the alternative, the Forest Service argues that the judgment of the district court should be affirmed because the Rehabilitation Act does not contemplate transfer accommodations for employees who require medical treatment despite being able to perform the essential functions of their jobs.  This court may affirm the decision of the district court on any basis for which there is support in the record.  See McCarty v. Gilchrist, 646 F.3d 1281, 1285 (10th Cir. 2011).  We disagree with the Forest Service, however, that the Act forecloses such accommodations in all circumstances.

---

[4] The Forest Service contends that the district court was not required to accept Sanchez' "self-serving" testimony as true.  We disagree.  So long as an affidavit is "based upon personal knowledge and set[s] forth facts that would be admissible in evidence," Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), it is legally competent to oppose summary judgment, irrespective of its self-serving nature.  See Williams v. Shields, 77 F. App'x 501, 503 (10th Cir. 2003) (unpublished).  A contrary rule would be especially problematic here because the substantial limitation "inquiry is based on an individual's own experience."  Carter, 662 F.3d at 1143 (quotation omitted).

- 10 -

As an initial matter, we reject the Forest Service's suggestion that transfer accommodations are generally "not mandatory." This court has plainly held that "a reasonable accommodation may include reassignment to a vacant position if the employee is qualified for the job and it does not impose an undue burden on the employer." Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999). "Anything more, such as requiring the reassigned employee to be the best qualified employee for the vacant job, is . . . unwarranted by the statutory language or its legislative history." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1169 (10th Cir. 1999) (en banc).

Nevertheless, this circuit has thus far required transfer accommodations only if an employee, "because of disability, can no longer perform the essential functions of the job that she or he has held." Id. at 1162 (quotation omitted). We must therefore consider whether transfers for medical treatment also fall within the Rehabilitation Act's ambit. Several of our sibling circuits have concluded that the Act contemplates such accommodations. See Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 n.9 (1st Cir. 1996); Fedro v. Reno, 21 F.3d 1391, 1395-96 (7th Cir. 1994); Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993).

The Seventh Circuit has perhaps the most expansive jurisprudence on point. That court has held that accommodations may be required to allow an employee to: "(1) perform the essential functions of the job in question, (2) pursue therapy or treatment for their handicap, or (3) enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees." Fedro, 21 F.3d at 1395-96 (citation omitted);

- 11 -

see also McWright v. Alexander, 982 F.2d 222, 227 (7th Cir. 1992) ("The Rehabilitation Act calls for reasonable accommodations that permit handicapped individuals to lead normal lives, not merely accommodations that facilitate the performance of specific employment tasks."). Similarly, the First Circuit has held that "even when qualified employees are able to perform a job's essential functions, employers may not be relieved of their duty to accommodate where accommodations are required to allow equal enjoyment of employment privileges and benefits or to pursue therapy or treatment." Jacques, 96 F.3d at 515 n.9.

The Ninth's Circuit's decision in Buckingham is most analogous to the case at hand. There, a federal postal service worker with HIV requested a transfer from Columbus, Mississippi to a post office in Los Angeles where he could obtain medical treatment for his condition. Buckingham, 998 F.2d at 737. Over the government's objection, the Ninth Circuit held that the transfer was not precluded from being a reasonable accommodation as a matter of law. In so holding, the court expressly rejected the argument that Buckingham's request was unreasonable because it was "not tied to his ability to perform the essential functions of his job." Id. at 739. The court explained:

> [C]ontrary to what the government urges, employers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job. Qualified handicapped employees who can perform all job functions may require reasonable accommodation to allow them to (a) enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees or (b) pursue therapy or treatment for their handicaps. In other words, an employer is obligated not to interfere, either through action or inaction, with a handicapped employee's efforts to pursue a normal life.

- 12 -

Id. at 740.

Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") support our sibling circuits' interpretation. According to the EEOC, disability law cognizes not only those reasonable accommodations that "enable an individual with a disability who is qualified to perform the essential functions of that position," but also those that "enable a[n] . . . employee with a disability to enjoy equal benefits and privileges of employment that are enjoyed by . . . other similarly-situated employees without disabilities." 29 C.F.R. § 1630.2(o)(ii) & (iii). Accordingly, the EEOC interpretive regulations contemplate accommodations that are wholly unrelated to the essential functions of a job. See McDonald v. Dep't of Envtl. Quality, 351 Mont. 243, 253 (2009). An employer's duty to modify the work environment, for example, "even applies to nonwork facilities . . . such as restrooms and break rooms." Id. at 258; see also 29 C.F.R. app. § 1630.2(o). These regulations comport with this court's insistence that "[f]or federal employers, nondiscrimination requires more than mere 'equal treatment' of disabled employees and job applicants, and encompasses an affirmative duty to meet the needs of disabled workers and to broaden their employment opportunities." Woodman, 132 F.3d at 1337-38.

The Forest Service urges us to split with the enforcement agency and our sibling circuits by adopting a rule that accommodations are required only if an employee cannot perform the essential functions of her job. In support of its argument, the Forest Service

quotes Woodman for the proposition that courts should first "determine whether the individual could perform the essential functions of the job" and then only if "the individual is not able to perform" consider "whether any reasonable accommodation by the employer would enable him to perform those functions." 132 F.3d at 1338-39. However, this passage from Woodman states our two-part test for determining "whether an individual is 'qualified' within the meaning" of federal disability law. See id. at 1339. Woodman does not speak to whether a requested accommodation is per se unreasonable.

We note, moreover, that our jurisprudence regarding leaves of absence would seem inconsistent with the agency's proffered approach. In particular, we have held that "[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation." Taylor, 196 F.3d at 1110; see also Rascon v. U.S. West Commc'ns, Inc., 143 F.3d 1324, 1333-34 (10th Cir. 1998). In Rascon, the plaintiff suffered from posttraumatic stress disorder. Id. at 1326. Despite his disabling condition, Rascon was able to work, ostensibly due to his "motivation and work ethic." Id. at 1328. Although Rascon "was having emotional difficulties at work," we found no evidence in the record that he could not perform the essential functions of his position. Id. at 1333. Rascon's doctors nevertheless recommended that he undergo intensive in-patient treatment, id., because such a program was "very likely to improve Mr. Rascon's work and home life by assisting him to cope with his" condition. Id. at 1334. Rascon requested several months' leave to attend the program, but his employer declined to accommodate him. Id. We held that this refusal violated disability law because Rascon's treatment-related leave was

- 14 -

a reasonable accommodation.  Id. at 1335.

Considering the case law from this court and others, we conclude that a transfer accommodation for medical care or treatment is not per se unreasonable, even if an employee is able to perform the essential functions of her job without it.  An employer may, of course, avoid obligation under the Act by showing that a requested accommodation is an undue burden in a particular case.  The Forest Service, however, has not argued below or before this court that transferring Sanchez would have imposed such a burden.  Accordingly, we do not address this question.  For the same reason, we do not opine as to whether reassignment was necessary for Sanchez to access treatment.  Without resolving the reasonableness of a transfer accommodation in this particular case, we hold as a matter of law that transferring an employee for the purposes of treatment or therapy may be a reasonable accommodation under the Rehabilitation Act.

## III

We **REVERSE** the district court's order granting summary judgment and **REMAND** this matter for further consideration consistent with this opinion.