# IN THE COURT OF APPEALS OF IOWA

No. 16-0699
Filed January 11, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**REED NATHAN BARCLAY,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

A defendant appeals his indeterminate fifteen-year prison sentence for delivery of methamphetamine as a habitual offender. **AFFIRMED.**

Sarah A. Reindl of Reindl Law Firm, Mason City, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Reed Barclay alleges the sentencing court discriminated against him because he suffers from mental illness. Barclay seeks to have his prison sentence vacated and to be admitted into drug court. Because Barclay's claim of discrimination does not lead to his desired remedy, we affirm his judgment and sentence.

## I. Prior Proceedings

In December 2015, the State charged Barclay by trial information with two counts of delivery of methamphetamine, class "C" felonies, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.413 (2015), as a second and subsequent offender under section 124.411, and as a habitual offender under sections 902.8 and 902.9(1)(c). In February 2016, Barclay initialed and signed a written plea of guilty to one of the two delivery counts. As part of the agreement, the State agreed to dismiss the second count and to recommend a prison term not to exceed forty-five years, all suspended; five years' probation; and placement in drug court.

The Second Judicial District Department of Correctional Services completed a presentence investigation (PSI) in April 2016. Thirty-four-year-old Barclay reported to the investigator that he had been "diagnosed with schizoaffective disorder, ADHD, and intermittent explosive disorder and was in special education and behavior disorder classes while in school." He dropped out of high school after the eleventh grade but received his GED from North Iowa Area Community College in 1999.

Barclay also reported being a daily user of methamphetamine and was diagnosed with a severe amphetamine-type substance-abuse disorder. He received in-patient treatment at Prairie Ridge Integrated Behavioral Healthcare in Mason City in 2015, but he left the program in December of that year and was hospitalized at the Mercy Medical Center psychiatric unit. According to the PSI, Prairie Ridge staff evaluated Barclay in February 2016 as a result of a drug-court referral. The PSI reported the drug-court team decided not to accept Barclay into the drug-court program. The PSI recommended Barclay be sentenced to a prison sentence not to exceed forty-five years, reasoning: "The defendant's criminogenic needs require a higher level of supervision than what community based supervision can provide."

Barclay was aware of the drug-court team's decision at the March 2016 guilty-plea hearing. His counsel explained: "Mr. Barclay has been evaluated for drug court and they won't accept him at this time. They might reevaluate him over the term of his probation, but right now they believe it's a little too much anxiety for him to participate in that right off the bat." The plea-taking court responded: "So the screening for drug court has been done, and that's not an option at this time. So I'm assuming then we're just going to jointly recommend probation to the Department of Correctional Services without involvement in drug court?" Defense counsel agreed that was accurate. But the prosecutor said he still intended to recommend drug court, saying "It's still . . . the court's discretion

whether they allow him in.[1] So since that's what I agreed to, that's what I'm going to recommend." Barclay personally affirmed he understood the status of the drug-court recommendation and, nevertheless, went ahead with his guilty plea.

At the April 2016 sentencing hearing, the State recommended "a forty-five-year prison sentence with the one-third mandatory minimum imposed but that sentence be suspended with a recommendation for placement in the Cerro Gordo County drug court." The prosecutor continued:

> [I]n support of my recommendation, I do believe [Barclay] does have a lengthy drug history and criminal history that would suggest that he does need . . . the drug court and its specialized training in order to be successful in becoming a productive member of our society. I do believe a lot of his offenses are drug-induced or drug-related, so the State feels that the drug court would be in his best interest and will leave it for the court's determination.

Defense counsel asked the court to accept the State's recommendation but also asked the court to sentence Barclay to "something other than forty-five years" as recommended by the PSI. Defense counsel revisited the drug-court discussion:

> Again, Mr. Barclay did apply for the drug court. Initially he was rejected. . . . I'm not sure the reason, but I know that they had reached capacity or very close to it at the time that Mr. Barclay had applied. Certainly during his probation supervision if they reevaluated him, made a determination that he was appropriate for drug court—he's nodding his head indicating to you, your Honor, that he would like to participate in that. He's heard some very good things about that.

---

[1] Our record does not contain any information about the application and approval process for the Cerro Gordo County Drug Court. Thus, it is not clear that the district court did have unilateral discretion to accept a defendant into the program.

In his allocution, Barclay shared his "plan for success" in pursuing drug treatment in the community so that he could be a "contributing member of society" if he was not accepted into drug court.

In imposing sentence, the judge told Barclay he was considering the statutory factors, including Barclay's age, prior record, employment circumstances, nature of the offense, his attitude, and the information and recommendations in the PSI. The court also assured Barclay he was seriously considered for participation in drug court:

> I oversee drug court, and for multiple reasons you were deemed not acceptable for the drug court program. And I'm not required to explain why somebody gets or doesn't get into drug court, but I want to assure you and everybody that's here supporting you that we don't take those applications lightly and we really looked hard at your situation and talked a lot about it.

The court further addressed Barclay's combination of substance-abuse and mental-health issues.

> One of the problems that we have that you present for us is a societal problem, and it bothers me. I want you to know that mental illness is a topic that is very close to me, and our society just really has failed miserably in providing the resources we need to properly deal with mental illness. And then when you combine that with serious drug addiction, it just compounds the problem. And, you know, you are a classic dual diagnosis defendant as you sit here. I know you know this. I'm pretty sure the people here for you know this. Your record is abysmal. It's really bad. And that's why you sit here facing this charge as a habitual offender.

The court then offered the following explanation for imposing an indeterminate fifteen-year term of incarceration:

> From my vantage point the only way probation would work for you is in some type of a specialty court, which we just don't have the resources to handle a person in your situation. And, you know, some days are just less fun than others for my job, Mr. Barclay, but I think the recommendation from the Department of

Correctional Services is appropriate and we're going to impose the prison sentence. However, . . . I am not going to impose the triple sentence on you. I believe that the [fifteen] years with five-year mandatory minimum will be sufficient to obtain the sentencing objectives.

Barclay appeals, contesting only the sentence imposed. He contends the district court "discriminated" against him "at sentencing because of his disability denying him equal protection under the law and violating the Americans with Disabilities Act as Amended."

## II.        Scope and Standards of Review

Our standard of review depends on the nature of the challenge to the sentence. *See State v. Seats*, 865 N.W.2d 545, 552–53 (Iowa 2015). To the extent Barclay raises an equal-protection claim, we review the sentence de novo. *See id.* at 553. But we review Barclay's nonconstitutional claim invoking the Americans with Disabilities Act Amendments Act of 2008 (ADA) for the correction of legal error. *See id.* In general, we review a sentencing decision for an abuse of discretion. *See State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *Id.*

## III.       Analysis

Barclay argues he was denied entry into drug court "because of his mental illness, and his sentence of incarceration, rather than accommodating him in the drug court program, discriminated against him based upon his disability." He asserts: "If drug court is a program that is offered to drug users, it was illegal for the trial court to deny drug court to Mr. Barclay because he is disabled and a drug user." Barclay contends the sentencing court's decision violated the ADA

and "his right to equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution."[2] Barclay cites *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 209 (1998), for the proposition that correctional services, programs, and activities shall not be denied as the result of a disability.

The State counters that Barclay has chosen the wrong forum for his disability complaint. The State relies on the analysis from a similar sentencing challenge before a Virginia appellate court, quoting: "Nowhere in the ADA does it appear that Congress intended the Act to provide rights that could be asserted in a criminal proceeding . . . ." *See Wilson v. Commonwealth*, 522 S.E.2d 385, 387 (Va. Ct. App. 1999). The Virginia court rejected Wilson's argument that *Yeskey* governed the sentencing court's order of incarceration, denying her admission to a detention center program due to her mental health condition. *See id.* (emphasizing *Yeskey* involved a civil suit filed against a department of corrections in accord with ADA provisions).

Our supreme court expressed a similarly narrow view of *Yeskey*'s holding when rejecting a claim that a sentencing court erred in failing to consider the ADA in mitigation of punishment or in deciding the appropriate placement among sentencing options. *See State v. Jacobs*, 644 N.W.2d 695, 697 (Iowa 2001). The court opined: "Our review of that decision convinces us that it only mandates that specific services otherwise provided to prison inmates shall not be denied as

---

[2] Although Barclay mentions equal protection in his appellate brief, he does not include any argument in support of a constitutional claim. Accordingly, the equal-protection issue is not properly before us. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008) (holding a conclusory statement without argument waives an issue).

the result of a disability. The defendant here has been denied no service because of his disability." *Id.* The *Jacobs* court did not address the applicability of the ADA in a criminal proceeding because it found the "defendant's disability, if any, did not play any role in [the sentencing] decision." *See id.*

Barclay contends his case differs from *Jacobs* because the sentencing judge, who happened to belong to the drug-court team, suggested Barclay's mental illness was a factor in the team turning down his application. In turn, the court denied Barclay's request for probation, believing Barclay would not succeed outside of prison without drug-court supervision. The State agrees the drug-court rejection influenced the court's decision to sentence Barclay to prison but disagrees that the drug-court team's reasons for rejecting Barclay's application are apparent from this record.

After canvassing the parties' arguments, we are not persuaded Barclay is entitled to relief from his prison sentence under the ADA. Congress enacted the ADA to eliminate discrimination against people with disabilities and to create causes of action for qualified people who have faced discrimination. *See* 42 U.S.C. § 12101(b). Congress amended the ADA in 2008 to reject several opinions of the United States Supreme Court that had "the effect of restricting the meaning and application of the definition of disability." *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 8 (Iowa 2014) (quoting statement from then Iowa Senator Tom Harkin). But Barclay has not pointed us to any precedent from Iowa or other jurisdictions where a criminal defendant has relied on the ADA to successfully attack a sentencing court's exercise of discretion, and we have found none.

Generally a successful showing of discrimination under the ADA requires a plaintiff to show he or she has a physical or mental impairment that "substantially limits one or more major life activities." *See Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012) (quoting 42 U.S.C. § 12102(1)(A)). "[I]t is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity." *Id.* Because Barclay did not challenge his exclusion from drug court before or after entering his guilty plea, we have no record regarding his mental impairment, other than the information he provided to the PSI preparer. And we have no showing the mental illness diagnoses listed in the PSI posed a substantial limit on a major life activity for Barclay. Accordingly, we cannot find the ADA applies to this case. *See generally Evans v. State*, 667 S.E.2d 183, 186 (Ga. Ct. App. 2008) (rejecting challenge by criminal defendant found ineligible for drug court where defendant "neither argued nor demonstrated" his disabilities affected a major life activity).

Barclay is correct in asserting an illegal-sentence claim stands as an exception to the rules of error preservation. *See State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009) (holding claim that sentence was illegal because it violated constitutional provision could be raised for first time on appeal). But that error-preservation exception does not absolve Barclay from showing he is a "qualified individual with a disability," who meets the essential eligibility requirements for participation in the Cerro Gordo County drug court, to prove an ADA violation. *See* 42 U.S.C. § 12131(2). Even if a criminal case could serve as an appropriate forum for an ADA challenge, Barclay did not lay the proper groundwork here.

Finally, the State contends it was permissible, in fact mandatory, for the district court to consider the impact of Barclay's mental health issues on his need for rehabilitation and the need for community protection. *See* Iowa Code § 907.5(1)(e) (directing court to consider "[t]he defendant's mental health and substance abuse history and treatment options available in the community and the correctional system" before suspending sentence). We agree and find no abuse of discretion in the court's sentencing decision. *See State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983) (holding "right of an individual judge to balance the relevant factors in determining an appropriate sentence inheres in the discretionary standard").

**AFFIRMED.**